[S. C., infra, 233.]
Ejectment — Common rule, not guilty, and issue. —
The lessor of the plaintiff claimed, under a grant from the State of North Carolina, to Stockley *Page 145 
Donelson, for fifty thousand acres of land, dated the first of January, 1795, and a deed from Donelson to the lessor of the plaintiff, dated the twelfth of August, 1797.
The defendants claimed under the same grant, and a deed made by Henry Brazeale, deputy sheriff of Knox county, to the defendant Smith, dated on the nineteenth of September, 1799, for the same fifty thousand acres of land. The sheriff's deed was made under the authority, as it recited, of three judgments: one, Douglass against Donelson, obtained at April term of Hamilton District Court, 1795; an execution issued upon this judgment for costs; another, Donelson's Lessee v. Renfroe: judgment for costs at October term, 1794, of the same court; and the third, Lyon v. Brown, in which Meek came into court, and, in the name of Stockley Donelson, assumed costs at April term, 1796. Executions issued against Donelson upon each of these judgments, which came to the hands of the sheriff of Knox, who put them into the hands of his deputy. In virtue of these executions, the deputy, on the sixteenth of September, 1799, sold the said land at public vendue, when Smith, one of the defendants, became the purchaser. Returns were made on the executions of Douglassv. Donelson, and Donelson v. Renfroe, but no return on the one of Lyon v. Brown. The land was sold for twenty-eight dollars; the judgment in the case of Douglassv. Donelson, for costs, was twenty dollars, eighty-two and two-third cents, but by running of executions, the execution, when the land was sold, amounted to twenty-four dollars, four cents; that of Donelson v. Renfroe, to twenty-two dollars, eighty-three cents. The return upon the execution of Douglass was "levied upon fifty thousand acres of land, and sold; part of the money to be applied to the extinguishment of the execution, Donelson v.
Renfroe, the balance towards the discharge of this execution." There was also a similar return made upon the other execution.
WHITESIDE, WILLIAMS, and TRIMBLE objected to the reading of the deed from the deputy sheriff upon three grounds; first, the judgment did not authorize the executions which issued; secondly, if it did, *Page 146 
the deputy sheriff had no authority, by law, to execute a deed; thirdly, land or real estate cannot be sold under a judgment for costs.
As to the first, the deed recites the sale to have been made by virtue of three executions mentioned above; now, it is evident that no execution could rightfully issue upon the judgment in the suit, Lyon v. Brown, in consequence of Donelson's assumpsit of costs. Admitting for a moment that Meek was authorized to do it, Donelson could not in this way be admitted a party to the record; it therefore follows that any sale made by virtue of this execution must be void, as well as the sheriff's deed made under it.
This, however, is not the principal point in this part of the case; the returns upon the two executions show that in reality the, sale was made upon the execution, Donelson's Lessee v. Renfroe, though the return upon the execution, Douglass v. Donelson, states that it was levied and sold, c., it then states that twenty-two dollars eighty-two cents was to be applied to the discharge of the other execution of Donelson's Lessee v. Renfroe. This suit was dismissed, upon which the clerk issued execution against Donelson; this he had no right to do without some order of court; he could only issue execution against the nominal plaintiff. The deed therefore is defective, because it recites that the land had been sold by virtue of three executions, two of which were absolutely void. It is insufficient, because it appears, in fact, that the land was sold to satisfy the execution in the case of Donelson's Lessee v.
Renfroe, and not in that of Douglass v. Donelson, which is the only one of these three that can be called an execution. Land cannot be sold upon an execution for costs; an injunction in chancery will not lie against an execution for costs, it cannot be considered a debt, and therefore cannot be a lien upon property.
The returns on the executions do not show to whom the land was sold, and that is necessary, otherwise the sheriff's deed cannot avail, agreeably to the decision in the case of Deaderick's Lesseev. Tipton, at Jonesborough, about twelve months ago.
The deputy sheriff cannot make a deed; an ordinary deputation will not give power to execute a *Page 147 
deed, it is not like the usual acts of a sheriff, it is attended with mere solemnity, and properly, for it is the act by which the real property of an individual is divested, and it is the first act to that effect. It is the common understanding of the country that a deputy-sheriff cannot make a deed for land; it must be done by the high sheriff. Communis error facit jus, is a maxim which applies to this case. If there were no adjudications on the subject, October, 1784, c. 7, § 10, shows this to be the sense of the legislature. The language of this section is that the sheriff shall make deeds, — it does not mention deputy sheriffs. There is no doubt of the common law on this subject; it is expressly laid down that all acts of the deputy must be in the name of the principal; the sheriff may remove his deputy, but cannot abridge him of any part of his power. 4 Bac. 437; Wood's Inst. 74; Salk. 96, shows that the authority of a deputy may be revoked, as in the case of other attorneys, but that all returns must be made in the name of the high sheriff. In England, lands are not liable to be sold, consequently sheriffs have no deeds to make; if they had, the cases with respect to returns by deputies clearly evince that it must be in the name of the principal sheriff.
CAMPBELL and SCOTT, in answer. — The situation of deputies here and in England is not the same; our law requires deputies to be sworn. But taking the case on the ground it stands in England, the law gives all the ordinary powers of a sheriff to his deputy, and there is no reason for excluding the power of making deeds. An individual can authorize another to make a deed, why should not the law authorize a deputy sheriff to make a deed for his principal for land which he himself has sold? The deputy, acting as deputy, is acting in the name of the sheriff; writs are not directed to the sheriff by name. In Wood's Inst. 74, the reason is given why it is necessary for returns to be made in the name of the high sheriff, he is `a sworn officer. Salk. 96 shows clearly that the power of the deputy cannot be restrained by covenant. In Hayw. 181, we find a case where the return of a subpœna by a deputy was held good; here it did *Page 148 
not appear that the deputy was sworn. In the case Smith v.
Winton, at the last term, the Court then thought the deputy's deed good, and they had not heard any reason to convince them the law was otherwise.
WHITESIDE, in reply. — The defendants' counsel rely materially on what was said at the last term, knowing that nothing of a similar nature had ever happened before. It was a hasty opinion upon the spur of the occasion, and had not received due consideration. The power of a sheriff is the same here that it is in England; there is no such difference as has been contended for. Powel on Powers, which has been relied upon, does not apply to the case of principal and deputy sheriff. The cases put there are those of ordinary powers of attorney. The situation of a deputy sheriff is different in many respects from that of an attorney-in-fact. If a general power be given, no execution of it will be good without reciting the power, otherwise of a special power. All writs are directed to the high sheriff, and the return should accord with it; the return should be in the name of the sheriff. How can his acting as deputy refer to Robert Houston, high sheriff of Knox? His name is not mentioned. It is true that writs are directed to the sheriff without naming him, but returns by his deputies are made in his name. The case in Haywood, 181, proves this doctrine. If the law is that a deputy must act in the name of the high sheriff, the deputy must sign the name of his principal, otherwise not good.
If an attorney-in-fact, in the performance of any act committed to his agency, use only his own name, the execution of the power will be void.
The law cannot know any person as deputy, it only knows the high sheriff; this is the uniform and prevailing opinion, it was never questioned until now, nor was there ever a deed from a deputy sheriff heard of before this. It has been urged that great mischief would arise if deputies were not allowed to make deeds as well as to execute other duties of a sheriff.
The argument ab inconvenienti is the other way. *Page 149 
In ordinary transactions of life an attorney must have a special power to make a deed; one copartner in trade cannot make a deed for another without a special power.
It would be attended with great inconvenience if deputies were permitted to divest rights to real estates; the law never intended to intrust them with such a power. Our Acts of Assembly do not speak of deputies when deeds are directed to be made.
OVERTON, J., sitting alone (WHITE, J., having been employed as counsel, and CAMPBELL, J., interested in a similar question).
The first consideration which obtrudes itself upon the mind, is, whether the sale by the deputy sheriff is valid. It is contended that the deputy sheriff may lawfully sell lands, but the difficulty in this part of the case arises from the objection to the validity of the executions recited in the sheriff's deed.
These objections relate however only to the executions which issued in the suits of Donelson's Lessee v. Renfroe, and Lyon against Brown. It strikes me that the objections are solid and sustainable. Will the execution of Douglass against Donelson be sufficient to authorize the sale when associated with the other two, which are void? It seems sufficient, and the recital of two other void executions in the deed should be considered as surplusage. Redundant or useless recitals cannot vitiate that which was good.[1]
There was no necessity for the sheriff to recite any thing more than the execution of Douglass v. Donelson. But it is objected that it appears from the sheriff's returns, that the land was not sold to satisfy this execution, but Renfroe's, since the money was applied in the first place to the satisfaction of that execution. This objection cannot obtain, the return on the execution of Douglass v. Donelson is "levied on 50,000 acres of land" sold, c. The return then goes on to state the application of the money. There was more money received from the sale than would satisfy either execution, but not both. A part was applied to the satisfaction of this. The authority to sell which was conferred by Douglass's execution, *Page 150 
the sale under it and the application of the money by the officer, are different and distinct considerations. It is expressly stated to have been sold under this as well as the other execution. One execution being unexceptionable is sufficient to support the sale. No distinction can be seen between a judgment for costs and any other in this respect.
The point which has been most insisted on is that the deed is void, having been executed by the deputy, and not high sheriff. The question has been ably and copiously argued on both sides. It is certainly new to me, and it would have afforded much pleasure to have had the assistance of the other judges.
In the decision of this part of the case, let the authority of the deputy be considered in the view of an ordinary power. Salk. Bac. have treated of the subject in this light. There is certainly a great, if not a complete, analogy.
Powel, one of the most judicious compilers, in his treatise on powers, affords us ample light, with respect to the law arising on the execution of powers: but before we consider the authorities to which he refers it may not be amiss to examine the powers of deputy sheriffs by the common law, and see whether any modification of these powers has arisen from our statutes.
By the common law, a deputy has ex virtute officii all the power of the high sheriff; nor can he abridge this power.[1] In England, there are a variety of cases in which it is not unusual for the sheriff to execute deeds. It is frequently done in the execution of the common writ of fieri facias. The nature of the writ of elegit seems to require it, after an extent, and upon the execution of a liberate. Whether indispensably necessary or not, the books show that it is done. In the performance of this part of the duty of a sheriff, it is not recollected that the law furnishes an exception, and reserves the exercise of this power to the high sheriff, in exclusion of the deputy. It is true that the deputy does not hold any office, and though he may generally do what *Page 151 
the sheriff can, it must be done in the name of the high sheriff. But whether the high or deputy sheriff shall make a deed, seems to relate more to form than to substance.[2] It is not denied but the deputy may lawfully sell; then if the high sheriff is to make a deed after a sale by his deputy, discretion is left in the officer whether he will make a deed or not. He must do it, and a court of equity would compel him to do it in case of refusal. Since then it is a matter of course that a deed should be made after sale, the objection that a deputy cannot make a deed in the name of his principal must savor more of technical formality than the justice of the case.[3] But it is said that the name of the high sheriff is not once mentioned in this deed. The language of the deed, is, that "Henry Brazeale, deputy sheriff of the county of Knox." It is conceived, that the omission of the name of the high sheriff is not fatal; the records of the county show who is the high sheriff. To common apprehension, the language used in the deed that it was done by the deputy sheriff, is as expressive of the idea that it was done for the high sheriff, as if his name were mentioned; id certum est quod certum reddipotest. If a deed is to be made after sale by a deputy it cannot be material who does the manual labor of writing and sealing, the high or deputy sheriff. The law will construe it the act of the high sheriff in both cases; and if the person acting were his lawful deputy he would be estopped from denying the deed.[4]
If this were the case of the execution of an ordinary authority, distinct from the duties of a sheriff, there would be no doubt of its being a good execution. It is insisted that the execution of the power is defective, as not containing a reference to the authority under which the act was done or performed; so careful is the law to preserve the existence of acts ut res magis valeat quam pereat, that, in common cases, it is not necessary to refer in the execution of a power to the power itself: provided it appears that the act can be good no other way. Pow. on Pow. 111, and the authorities there referred to.
If the distinction between judicial and *Page 152 
ministerial authorities be adverted to it will seem to confirm these impressions. No sub-agency can take place in the one, but may in the other. In most cases a sheriff is a ministerial officer. To what class of his duties does the execution of a deed for land sold under execution belong? Certainly to the ministerial. It is certainly best that the high sheriff should execute all deeds himself, being most regular; but at present it cannot be seen that a deed executed by a deputy, which purports to be for the high sheriff, will be void.[1]
The deed was then offered to be read, when it was stated the deputation to Henry Brazeale ought to be shown, and of this opinion was the Court. Copies from the records of the County Court of Knox were produced, which showed that Robert Houston was sheriff, and that Henry Brazeale was sworn in as his deputy. Robert Houston was also sworn, who deposed that he had given Brazeale a general deputation. But whether in writing he could not tell. Two objections were made to the introduction of this evidence: first, that there was no law authorizing the County Court to administer an oath to a deputy sheriff, consequently their act, in this respect, was extra-judicial, and ought not to be received in evidence. Where any court or magistrate is not authorized to do an act by law, their certificate of its performance can no more be received than that of a private individual; secondly, the high sheriff cannot make a deputy without deed; nor can the Court notice his act as such without producing the deed, showing the institution of his power. 1 Bac. 199.
In answer to the first objection it was urged that the Statute of 27 Eliz. c. 12, directs deputy sheriffs to be sworn, 4 Bac. 437; that Ire. Rev. 18, 1715, c. 31, § 7; ib. 353, April, 1778, c. 5, show what parts of the statutes of England are in force here of which this is one. And, if so, the first objection is at an end.
The second objection cannot prevail, the course of human affairs will not admit of it.
WHITESIDE, in reply, said that the statutes in England which are in force are pointed out in Ird. *Page 153 
18, § 7, taken in connection with the act in p. 353, in these words: "that all statute laws of England made for maintaining the queen's royal prerogative, and her royal person, and succession of the crown. And all such laws made for the establishment of the church, and the laws made for indulgence to Protestant dissenters, and all lairs providing for the privileges of the people and security of trade. As well as all statute laws made for the limitation of actions and preventing. of vexatious lawsuits, and for preventing immorality and fraud, and confirming inheritances and titles of land, are and shall be in force here, although this province, or the plantations in general, are not therein named." 1715. c. 31.
The act in Ird. 353, passed in the year 1778, after the commencement of the Revolution, and consequently some of the acts enforced in the former are done away by the latter in consequence of the change of government. But this act certainly did not mean to extend the Act of 1715. This act does not include the statute of 27 Eliz. c. 12. The language of the Act of 1778 is, "such parts of the statutes as were heretofore in force and use within this territory." The Act of 1715 shows what statutes were in force and use, and this act is not included, consequently it is not in force.
[1] See 1 Dall. 63, 93.
[1] See 2 T. Bl. 345; also n. 14.
[2] See Mary. 175, 176; 4 Hen. Mun. 184.
[3] 6 Wil. ed. Bac. Ab. 153, 154, 155, n.; 1 Wil. ed. Bac. Ab. 319, n.; 1 Pow. 111.
[4] See 4 Hen. Mun. 184; 2 East, 142; 1 Wil. ed. Bac. Ab. 319, n.; Hardin, 293. n.
[1] See 2 East, 142, n.
That part of the Act of 1715 which refers to royalty and its privileges is not in force, being incompatible with the present form of government and the Act of 1778. The same observation will apply to the statutes made for the benefit of an established church. The remainder of the act is obscure, and does not permit any specific and definite train of ideas in relation to what English statutes by that act are enforced. The construction of this act when standing alone, must have depended very much upon usage and the decisions of the superior courts. Information on this subject is wanting. It becomes, then, necessary to look carefully into the Act of 1778. The preamble of the act is in these words: "Whereas doubts may arise upon the revolution in government whether any and what laws continued in force here." Sect. 2 enacts *Page 154 
"that all such statutes and such parts of the common law as were heretofore in force and use within this territory and all the acts of the late general assembly thereof, or so much of the said statutes, common law, and acts of assembly as are not destructive of, repugnant to, or inconsistent with the freedom and independence of this State; and the form of government therein established, and which have not been otherwise provided for, in the whole or in part not abrogated, repealed, expired, or become obsolete, are hereby declared to be in full force within this State."
With respect to what part of the statutes of England, to use the language of this act, "were heretofore in force and use," no satisfactory opinion can be given; but the alternative of this sentence is susceptible of specification, the expressions are, "or so much of the said statutes, c., as are not destructive of, repugnant to, or inconsistent with the freedom and independence of this State and the form of government." In other words, all the statutes of England contemplated in this act are in force which are not inconsistent with the principles and the form of the government.[1]
The statues contemplated by the act were those which passed previously to the fourth year of Jac. 1st, when the charter to the colony of Virginia was granted, which included what was afterwards called North Carolina.[1]
This act having been passed previous to the fourth of Jac. 1st, the question is whether it is inconsistent with the principles or form of the government, or in the language of the 5th section of the Act of 1715, c. 31, Ird. 18. "with our way of living," it appears not, and therefore in force. Extra-judicial or extra-ministerial acts derive no authority from the certificate of the officer; but this is not the case with respect to the certificate of the clerk, now offered. The administration of the oath to the deputy sheriff was authorized by the Act of 27 Eliz. c. 12, and therefore the copy of the record is admissible.
In the creation of powers, or authorities, the law contemplates a deed. Whether it be essential or not between the person giving and receiving the *Page 155 
power, is not now necessary to inquire. The question arises between third persons; and it seems clearly to me, that, in controversies between persons other than the sheriff and his deputy, it is not necessary to show a deputation by deed;[2] no law is recollected which requires such powers to be registered, as in the cases of conveyances for land. It would therefore be unreasonable to oblige strangers to show a deed; in some cases it might be lost, in others withheld. With respect to third persons, then, other evidence is admissible, under the general rule of law, that the best of which the nature of the case is susceptible shall be produced. The evidence therefore which is offered is admissible; but the jury ought to be well satisfied that Brazeale was fully authorized to act as deputy. Let the deed be read, and the evidence received; the jury will judge of it.
The defendants' counsel then offered another chain of title, on which they also relied, consisting of a deed from Robert Houston, sheriff and collector of the taxes for the county of Knox, reciting that the land was sold as the property of George Wescot, John Ramsey, and Solomon Marks, to the defendant Smith, in consideration of the sum of $318, for the taxes of the years 1796 and 1797, on the 22d March, 1800. Deed dated 24th March. 1800. To support this deed, a transcript of the record of Knox county was read, showing a judgment and execution for these taxes.
A deed was then offered from Reed Co., to Wescot and others, upon a probate made before one of the judges of the Superior Court of Pennsylvania in July, 1797, and registered here in March, 1798. The reading of this deed was objected to as not having been proved according to law. It was not agreeable to the Act of October, 1797, nor any previous law.
CAMPBELL, in support of the probate, admitted that the Act of October, 1797, did not affect the case one way or the other, the probate having been made previous to the act. The Act of 1715, c. 37, § 7, Ird. 24, governs this case; it enacts, "That all deeds *Page 156 
and conveyances of land lying within this government, made in foreign parts, which shall he remitted hither, and proved before the chief justice or court of the precinct where the land lieth, in manner as before directed, or which shall be personally acknowledged and proved before the chief magistrate of any city, town, or corporation, within the king of Great Britain's dominions, and an attestation thereof affixed thereto; or which shall be acknowledged or proved before the governor or commander-in-chief of any of his majesty's plantations, and attested under the public seal, and registered in the aforesaid office where the land lieth within one year after the arrival of such deeds, shall be good and valid in law to all intents and purposes as if made and executed within this government."
It was admitted that the probate was not made agreeably to the letter of the act, but it came within the equity of it. A judge of the Supreme Court being an officer much higher in the consideration of the law than the chief magistrate of any city, town, or corporation.But by the Court: The act has prescribed a method, and the Court are not at liberty to depart from it. The deed cannot be read.
A deed from David Allison to William Reed Co., dated March 26, 1796, for the same tract, but stating that the tract had been found to contain 379,000 acres.
A power of attorney from Stockley Donelson to James Grant, dated November 3, 1795. This power states that the tract upon re-survey had been found to contain 200,000 acres, of which he is empowered to sell 120,000 acres, allowing for older claims within the same. Deed from Stockley Donelson by James Grant, dated March 22, 1796, conveying the whole grant, with an exception of older claims. Grant states in his deed that it was made in pursuance of a power of attorney under date of the 22d of September, 1792, registered in the county of Orange, within the State of North Carolina.
WHITESIDE objected to the introduction of this deed. He contended that the power produced is different from that recited in the deed. The one *Page 157 
produced is dated on the third of November, 1795, the one recited, dated 22d of September, 1792, and registered in Orange county; besides, this power is not registered in Orange county, so that the power produced does not support the deed. It is as inefficient to this end as if no power were produced at all; the Court cannot presume that it was made in pursuance of the power produced; when things are expressed, presumptions are excluded, is a maxim of law, the Court therefore are constrained to look to the power of the 22d of September, 1792, and if that be not produced the deed cannot be read. The necessity of the production of this power is further evinced by the very production of the one now before the Court. The execution of a power by Grant, as expressed in this deed, is inconsistent with the power produced; that only authorizes the conveyance of 120,000 acres — Grant has conveyed 200,000, the whole tract. 1 Bac. 199 shows that an authority must be by deed, and the deed produced, so that the Court may see whether the authority be well pursued or not. In the execution of a power if a man does more it is good for what he is authorized to do, but if less, it is void; as if a letter of attorney be given to make seisin upon conditions, and seisin is delivered absolutely, it will be void. Co. Lit. 258 b. There is another reason why the execution of the power is void, the excess cannot be separated, it is uncertain what part is conveyed, therefore void for the whole. 1 Salk. 96.
CAMPBELL, in answer. — Constructions should pursue the intent, as in the case of a mistake in calling a deed an indenture, when in fact it is not. 1 Bac. 199. There is a note of Hargrave and Butler to the passage in Co. Lit. 258 b, which shows the ground upon which this objection rests; that the execution of a power is not void, if there are any data by which the excess in its execution can be distinguished from what is authorized.[1]
The excess being older claims, can be distinguished and thrown out of view. As to the recital of a power under date 22d September, 1792, it is mere surplusage. Grant was not bound to recite at all, if *Page 158 
he did, or, if the recital be wrong or imperfect, the deed is good provided he had a power at all.[2]
WHITESIDE, in reply. — The doctrine of pleading is illustrative of this subject. If a plaintiff recites that in his declaration, which he is not bound to do, he is bound by it, and it cannot be considered as surplusage. The case in Powel. 111, shows that the date was right, and that was a principal point upon which the Court rested their judgment. In this case it is impossible to distinguish the excess; the execution of the power is therefore void. The case in 2 Ves. 644 demonstrates this doctrine.
[1] See 1 Bl. Com. 106-108; 1 T. Bl. part 1, app. 381-381, 432, 443, 444.
[1] See Salk. 411, 666; 3 Mod. 159; 4 Mod. 225, 226; 2 P. W. 75.
[2] See 2 Cain. E. 250; 2 Johns. 579; Sch. Lefroy, 31;2 Mass. 520; 11 East, 297.
[1] Powel on Powers, 344, 346, 377; 2 Ves. 644; Cow. 651; 2 Bac. 201.
[2] Pow. on Pow. 111.