SIDES *v.* KNICKERBOCKER LIFE INS. CO.

*(Circuit Court, W. D. Tennessee.* May 26, 1883.)

1. LIFE INSURANCE—INSURABLE INTEREST—DIMINUTION OR CESSATION OF—WAGERING POLICIES—INDEMNITY—LANDLORD AND TENANT.

Where there is, when the contract is made, an adequate insurable interest to support the policy, the insurer must pay the full amount of insurance according to the contract, without reference to the subsequent diminution or cessation of the insurable interest.

2. SAME SUBJECT—CASE IN JUDGMENT.

Where the tenant of a landlord having only a life interest in the land, insured the landlord's life for the full term of the life-assured, he is entitled to recover the face of the policy, regardless of the expiration of the lease, and cannot be limited to the value of the leasehold, either at the time of the death or date of the policy, upon any theory that the contract is one of indemnity, or that any insurance over the interest actually existing at the death is a wagering contract.

Motion for New Trial.

Action upon a policy of life insurance for $2,000, insuring the life of W. D. Dunn "for the benefit of William Sides," who is the plaintiff. The life-assured was, under his father's will, the owner of certain real property in Memphis to the extent, however, of only a life estate, the remainder interest belonging to his children. He leased the lot for 15 years to Sides by an ordinary lease, which did not, in terms, authorize the removal of any improvements the lessee might make, or contain any covenants in respect to improvements, except such as bound the lessee to pay the ground rents and taxes, and secured their payment. Dunn died within about 11 months of the expiration of the lease, and Sides surrendered the property, including improvements which had cost him $4,600, and were proved to be worth about $2,300, if they had been removed, which could have

been done without injury to the soil, being ordinary frame dwelling-houses.

At the time of the execution of the lease, fearing Dunn might die and terminate it, Sides procured this policy of insurance on his life, which, in form, purports to be taken out by Dunn for the benefit of Sides, who, in fact, paid the premiums, although the receipts appear to have been made as if the money had been paid by Dunn. The agents of the company knew all the facts as to the lease, the beneficial interest of Sides, that he really paid the premiums, and that the contract was made with him. Sides paid the premiums for 15 years, amounting to nearly $1,400, the last premium being made in ignorance of the fact that Dunn had died three or four days before it became due.

The defense made was that Sides had no insurable interest in Dunn's life, except for the one year's rental value between the death of Dunn and the expiration of the lease, which was proven to be $660, and as Sides owed the company $680 for deferred one-half premium notes, nothing was due on the policy. The court charged the jury—

"That if Sides' insurable interest depended solely on the question made about his right to remove or not to remove the improvements under the contract of lease, it might be that he was not entitled to recover anything except the rental value for the one year of the term remaining at Dunn's death; but in the view the court took of the case that question was immaterial; and if the jury concluded from the proof that the money value of the leasehold was as much as $2,000 at the time the contract of insurance was made, the plaintiff would be entitled to recover the whole amount, as the question of insurable interest was to be determined as of the date of the policy, and not as of the date of Dunn's death; that perhaps the law would hold the company to pay the face of the policy according to the contract, be the insurable interest at that time more or less, if there were a substantial insurable interest in the assured life, of which there could be no doubt in this case. But if the jury found the leasehold of sufficient value, at the date of the policy, to make the $2,000, it would not be necessary to decide that point, and the court would leave that question to the jury, instructing them, for the purposes of this case, that Sides could recover no more than the value of his leasehold at the date of the policy, with interest from maturity, from which should be taken the deferred premium notes; that Sides was entitled to recover the value of his leasehold, at the date of his policy, up to $2,000, no matter whether Dunn died before or after the expiration of the lease, nor how long after. If Sides paid the premiums he could recover to the extent already mentioned whenever Dunn should die,—the expiration of the lease, or the efflux of the term, not affecting the company's obligation to pay, there being no stipulation in the policy itself to require this, as there might have been if the parties had

chosen to make that kind of a contract; that the policy was not subject to any mutations or changes in Sides' interest between the date of the policy and Dunn's death; and that if his interest had ceased altogether at Dunn's death, he might, nevertheless, recover the insurable value to him of Dunn's life at the date of the policy, and he was not to be confined to the insurable interest he might happen to have at the death of the life-assured."

There was a verdict and judgment for the plaintiff for $1,847.57, and the defendant moved for a new trial.

*J. J. Dubose*, for plaintiff.

*E. L. Belcher*, (*W. H. Carroll* with him,) for defendant.

HAMMOND, J.    The court is now satisfied that it should have charged the jury, on the facts of this case, to find a verdict for the plaintiff for the amount of the policy less the deferred premium notes, and this without regard to the value of the leasehold, either at the date of the policy or the death of the life-assured.    Recognizing the immense difference between that immeasurable and enduring insurable interest which a wife or child may have in the life-assured, and that computable interest of a creditor, or other like stranger, the court hesitated at the trial to apply to this case the principle in its fullest extent of the case of the *Connecticut Mut. Life Ins. Co.* v. *Schaefer*, 94 U. S. 457, and took the most favorable view of the law that was possible for the defendant company.    But it was an error of which the defendant cannot complain; and since, on the proof, the jury found the value of the leasehold at the date of the policy to have been as much or more than the $2,000 called for by the policy, it was an immaterial error to the plaintiff.    If, however, the jury had found the leasehold of less value, thereby reducing the plaintiff's recovery, I should, in the view now taken of the law, grant the plaintiff a new trial.

There is no fundamental difference in principle, but one of only an immaterial degree, great as that degree may be, between the case referred to and this.    The supreme court had previously, in the case of *Ins. Co.* v. *Bailey*, 13 Wall. 616, indorsed the leading English case of *Dalby* v. *India & London L. Assurance Co.* 15 C. B. (80 E. C. L.) 365; S. C. 2 Big. Ins. Cas. 371; overruling *Godsall* v. *Boldero*, 9 East, 72, S. C. 2 Smith, Lead. Cas. 292, upon the exploded doctrine of which the defense in this case must ultimately rest; and in other cases fully disapprove of the notion that a contract of life insurance is one of indemnity.    There can be no question now that even in *Cammack* v. *Lewis*, 15 Wall. 643, the doubt there intimated would be resolved against any defense by the insurer like that made in this

case. *Ætna Life Ins. Co.* v. *France,* 94 U. S. 561; *Page* v. *Burnstine,* 102 U. S. 664. And this although the public policy against wagering contracts that gamble in human life is fully recognized, to the extent of holding that it applies even to an assignment of a policy on one's own life. *Warnock* v. *Davis,* 104 U. S. 775. Moreover, in *Ins. Co.* v. *Stinson,* 103 U. S. 25, a principle quite analogous is applied to fire insurance, which is confessedly one of pure indemnity. There the assured had a mechanic's lien, which he had abandoned, and the property was subject to a prior lien by mortgage which was greater than its value, so that the assured would, as a fact, have received nothing after the mortgage was satisfied. Yet, having an insurable interest, he was allowed to recover the full amount of his insurance until his debt was satisfied. Again, there is another analogy, in case of an insurance by a mortgagee, who may recover the full amount insured, where the value of the property is so great, although the mortgage debt may have been paid. May, Ins. (2d Ed.) § 116, and cases cited.

Hence, conceding the contract of life insurance to be one of indemnity, it does not appear that, under all circumstances, the recovery must be limited to what may be, under a process of paring to the core, the *actual* loss of the assured. And this consideration may reduce the dispute on the subject between some of the writers to one of mere words. May, Ins. §§ 7, 8, 115, 116, 117; 16 Amer. Law Reg. (N. S.) 399, note; Bliss, Ins. 42, and note.

Uniting, however, the doctrine of a public policy against wagering contracts of insurance to that of the doctrine that all insurance is indemnity against the loss incurred by the assured, the defense made in this case is easily deducible, whether the prohibition against gambling contracts is found in a statute, as in England, or in the common law, as in most of our American states. It prevailed in *Godsall* v. *Boldero; supra,* but was subsequently discarded, as we have seen, and upon the soundest reasons. In the house of lords, recently, the defense was called "a shabby thing," and it is said the companies, from the necessities of their business, repudiated it. *Burnand* v. *Rodocanachi,* 7 App. Cas. 333, 340; May, Ins. § 116. We have in Tennessee no such statute as 14 Geo. III, *c.* 48, (May, Ins. 122, note,) though there seems to be one like it in New York, where the defendant company belongs. Bliss, Ins. 27. And I am not aware that it has ever been decided in Tennessee whether we have a common law on the subject different from the common law of England, where ultimately it was settled that wagering policies were not

contrary to the common law. Bliss, Ins. § 20; May, Ins. § 75; *Dalby* v. *India & London Ins. Co.*, *supra; Lord* v. *Dall*, 12 Mass. 115; S. C. 1 Big. Ins. Cas. 154, and note; 2 Big. Ins. Cas. 428; 3 Big. Ins. Cas. 327, 330, and notes. Nor has it been decided in this state whether the English statute may be a part of our common law, though I imagine, as the statute does not mention the colonies, it is of too late a date to have that effect. *Glasgow's Lessee* v. *Smith*, 1 Tenn. 144, (Cooper's Ed.) note, 169.

Whether the courts of Tennessee would find the common law of England which we adopted to be against wagering policies, as some of our courts have done, or that there was no common law against them, as others have done, and as was done in Ireland, and that, in the absence of a statute, they are all valid, may be doubtful; or whether this matter is to be governed by the law of New York, where the defendant company belongs, may be doubtful. Conceding all that may be asked on this subject, and it will be found, from the cases already cited, and others belonging to the class of debtor and creditor, pure and simple, or, like this case, in more or less close analogy to that class, which may be traced through the citations, that wherever there is, to begin with, an adequate insurable interest, which demonstrates that the parties are not seeking to evade the prohibition against gambling policies, whether we go by a statutory or common-law prohibition, the insurer must pay according to the contract, and it is no concern of his, unless the policy provides against these misadventures, that there may have been, before the death occurred, a diminution or entire cessation of insurable interest. See the cases cited in *Preston* v. *Neele*, 12 Ch. Div. 760; 1 Big. Ins. Cas. 159; 3 Big. Ins. Cas. 156, 255; 4 Big. Ins. Cas. 162, 614. The surplus, if any, may or not, according to the circumstances in each case, go to the personal representative of the life-assured, when the remaining interest of the assured is satisfied; but it is now, since *Godsall* v. *Boldero* was overruled, never a defense to the insurer that the interest of the policy-holder has lessened or ceased.

Our public policy goes no further than to prevent unseemly, if not dangerous, speculation in the duration of human life, and has no other concern with the contract than this. It does not undertake, with apprehensive nicety, to measure the loss or the insurable interest, lest the assured get more than he loses, and be thus tempted to promote the death, that is so important a factor in the problem. It does not undertake to protect the parties on either side against bargains that turn out to be unprofitable when death steps in to make

plain that which was before uncertain, and impresses on the transaction the precise value of the bargain. It will tolerate no subterfuges of evasion which permit wagering in the duration of human lives, so liable to become enticing to a human nature overfond of dealing in "futures" of all kinds; but it cannot be invoked to relieve insurers against overestimates of the value of the insurable interest, or the assured from larger premiums than the insurance was worth. The English statute may be more precise in some of its requirements, but substantially the result is the same.

This case is very much like *Law* v. *London Indisputable Life Policy Co.* 1 Kay & J. 223; S. C. 3 Eq. 338; and 2 Big. Ins. Cas. 404, except that there the interest was founded in a legacy, while here it is based on a leasehold, and there the insurance was for a limited term, while here it was for the whole life; and this case illustrates the justice of either discarding altogether the notion of indemnity for *actual* losses, as the law does, or in measuring the loss, to take into account the premiums paid, and a fair return of them, with interest and profits, less cost of insurance, according to the scheme of life insurance; for the plaintiff here has actually paid in premiums nearly as much as the amount of the policy, to say nothing of the rental value of the remainder of the leasehold interest.

Overrule the motion.