## *Ex parte* TWEEDY.

*(District Court, W. D. Tennessee.   November 1, 1884.)*

1. NATURALIZATION — REV. ST. § 2165 — PROBATE COURT — COMMON-LAW JURISDICTION—TENNESSEE CODE, § 316*h*.

   The probate court of Shelby county, Tennessee, under the Code, § 316*h*, has no common-law jurisdiction, and is not, therefore, authorized to take a declaration by an alien of intention to become a citizen of the United States under the Revised Statutes, § 2165.

2. SAME SUBJECT—DOWER—BASTARDY—PARTITION.

   Neither its jurisdiction to allot dower, that over bastardy and bastards, nor that of partition of estates, is a "common-law jurisdiction," in the sense of the Revised Statutes of the United States.

3. SAME SUBJECT—COMMON LAW OF TENNESSEE.

   Whatever may be said of any other statutes passed in England before our revolution, the act of 18 Eliz. *c.* 3, concerning bastards, and that of 31 & 32 Henry VIII. *c.* 32, concerning partition, which are the foundation of the legislation on these subjects in Tennessee, were never a part of the common law of North Carolina or Tennessee, and will not, therefore, support any claim for common-law jurisdiction in the probate court of Shelby county.

Application for Naturalization.

*A. H. Douglass*, for applicant.

HAMMOND, J.   The applicant presents a duly-authenticated certificate showing that on May 20, 1881, he declared his intention to become a citizen before the probate court of Shelby county, and the question is whether that is a court "having common-law jurisdic-

tion," as required by section 2165 of the Revised Statutes of the United States. It seems to be settled that it is not necessary that the court should have general common-law jurisdiction; but if *any part* of its jurisdiction answers that designation the requirement of the statute is fulfilled. *U. S.* v. *Power*, 14 Blatchf. 223; *Ex parte Cregg*, 2 Curt. 98; *Ex parte Gladhill*, 8 Metc. 168; *State* v. *Whittemore*, 50 N. H. 245; *Ex parte Conner*, 39 Cal. 98.

In Tennessee, by constitutional and statutory provisions, our courts are divided into courts of law and equity, but by numerous statutes they respectively exercise concurrent jurisdiction in many matters not strictly belonging to them in their congenital capacities. The probate court of Shelby county has its jurisdiction regulated by the act of 1870, *c.* 86, Tenn. Code (T. & S.) § 316*h*. No trace of any common-law jurisdiction can be found in that statute, unless it may be the concurrent jurisdiction for "the allotment of dower," its "original jurisdiction over bastardy and bastards," or its concurrent jurisdiction "for the partition or sale of estates." Its general jurisdiction is that formerly belonging to the ecclesiastical courts, but the *assignment* of dower is not incident to the administration of estates of deceased persons, nor analogous to any proceeding of a court of ecclesiastical jurisdiction. Smith, Prob. Law, 5, 257. Common-law courts did have inherent jurisdiction of the *assignment* of dower, but it will be found that the common-law right to and the remedies for the recovery of dower have been abrogated and superseded by our Tennessee statutes, so that it is no longer of "common-law jurisdiction" in any of our courts to allot dower, but one of purely statutory jurisdiction, of which the circuit courts of law, the chancery courts of equity, and the county or probate courts, all have concurrent jurisdiction; and, in this matter of the *allotment* of dower, by the act creating its jurisdiction, the probate court of Shelby county "is vested with all the powers of a *chancery* court." The inherent jurisdiction of a chancery court over the subject of dower is of equitable cognizance, as contradistinguished from that common-law jurisdiction which a court of law formerly exercised; and if the probate court jurisdiction should be relegated to either, it is, by the language of the statute above quoted, placed on the basis of that of the equity courts. But this is, I think, quite immaterial, since the result of our statutes and judicial decisions is to establish on this subject of dower an entirely uniform jurisdiction, so far as concerns this case, in all the courts having concurrent power over it, so essentially different, in the right and the remedy known to the common law, that in none of them can this jurisdiction serve as a foundation to support the authority to naturlize aliens under the laws of the United States.

To show this, suppose we consider the provisions of the Code defining the right of dower, and prescribing the peculiar remedy for its enforcement, to have been repealed, but the act establishing the probate court of Shelby county to remain as it now is. What is the re-

sult? Laying aside embarrassment of mere detail not pertinent here, it is clear that, the common-law right and remedy for dower being restored, necessarily, under our judicial system, the circuit courts of law would exercise the common-law jurisdiction, and enforce the common-law remedies, while the chancery courts of equity would retain the equitable jurisdiction and remedies belonging to a court of equity, and the probate court of Shelby county could exercise only the latter by the very language of the statute, and in the very nature of its organization, not being provided with the machinery of a court of law. Smith, Prob. Law, 5, 257; 2 Scrib. Dower, 91, 120, 200; Tenn. Code, (T. & S. Ed.) 316*h*, 2398–2403, 2407–2419; *London* v. *London*, 1 Humph. 1; *Thompson* v. *Stacy*, 10 Yerg. 493; and other cases cited in notes to the Code.

The jurisdiction of the probate court "over bastardy and bastards" comes nearer being a "common-law jurisdiction" than that just considered. Tenn. Code, (T. & S. Ed.) 4208, 5354–5375, and notes. The whole jurisdiction is divided between justices of the peace and the probate court, but will, for the purposes of this case, be considered together. This jurisdiction had no place in the *common law* of England, but is similar in many respects to that given to justices of the peace and the quorum court of general sessions of the peace, by the statute of 18 Eliz. *c.* 3; 2 Bac. Abr. (Bouv. Ed.) tit. "Bastardy," 95.

I would be disposed to hold that, under the rules established for construing this clause of our naturalization laws, by the above-cited cases, this is a matter of "common-law jurisdiction," if the statute of Elizabeth had been common law in this state, but I am of opinion it never was a part of our common law, and that it has always been and remains statutory. It may be a question whether the act of congress should not be construed wholly with reference to the common law of England, and in this respect without regard to that peculiar "common law" which has been established in some of the states as including those English statutes which our forefathers brought with them. But waiving this consideration, which would certainly defeat any power claimed by the probate court of Shelby county to act under the naturalization laws, and the result is the same. It is very difficult to determine with satisfaction whether any given English statute is a part of the common law of Tennessee, or is enforced by virtue of its legislative adoption. Meigs, Dig. (2d Ed.) § 1844; *Glasgow* v. *Smith*, 1 Tenn. 144, and Cooper's note, 168. So far as the question pertains to this case, there should be no difficulty about it, in my judgment. By an act of 1715, *c.* 30, the province of North Carolina enacted that, with certain exceptions, "the common law is and shall be in force in this government till it shall be altered by act of assembly," and "that all statute laws of England" made for certain enumerated purposes, including those "for preventing immorality and fraud," "shall be in force here, although this province, or the plantations in general, are not therein named." This was continued

in force by a subsequent act of 1749, *c.* 1, if this last was not itself abrogated by royal proclamation, leaving the first in force.

In 1741 another act was passed for "the better observance and keeping of the Lord's day, commonly called Sunday, and for the more effectual suppression of vice and immorality," in which there is found a regulation of this jurisdiction "over bastardy and bastards," very similar to the statute of Elizabeth and our present Tennessee Code, both above cited. By a temporary ordinance to the first constitution of North Carolina of 1776 "the statute laws and such parts of the common law and acts of assembly heretofore in use" were continued in force, and, by an act of assembly in 1778, *c.* 5, "all such statutes and such parts of the common law as were heretofore in force and use within this territory, and all acts of the late general assemblies thereof, etc., as are not destructive of, etc., the freedom and independence of this state, etc., are hereby declared to be in full force within this state." By the act of 1789, *c.* 3, ceding the western territory, of which Tennessee is composed, and which was accepted and re-enacted by congress, it was a condition "that the laws in force and use in the state of North Carolina, at the time of passing this act, shall be and continue in full force within the territory hereby ceded until the same shall be repealed or otherwise altered by the legislative authority of said territory." By the Tennessee constitution of 1796, art. 10, § 2, and that of 1834, art. 11, § 1, and that of 1870, art. 11, § 1, "all laws and ordinances now in force and use" in this territory and state, respectively, were continued in force. 1 Mart. Laws N. C. 14, 53, 87, 198, 252, 466, 467; 2 State Chart. & Consts. (U. S.) 1664, 1673, 1687, 1701; Tenn. Code, (T. & S. Ed.) 113; Meigs, Dig. (2d Ed.) § 1844.

I have not examined the title of the statute of Elizabeth conferring this jurisdiction "over bastardy and bastards" upon justices of the peace and the county courts, from which the probate court of Shelby county has derived it by regular succession, but it is plain that whatever may be the rule in other states on this subject, or whatever be the title of that statute, and whatever may be said of any other English statute, this one has never been a part of the common law of North Carolina or Tennessee; because, whatever its title, by the original act of 1715 it must have been thought to be an act "for preventing immorality," since by the act of 1741, "for the more effectual suppression of vice and immorality," it was amended and enlarged to suit our circumstances. It is to be observed how this early legislation carefully distinguished between the "common law," "English statutes," and "acts of assembly," thereby showing that there were mainly three several sources of local law. The act of 1715 did not pretend to enumerate the English statutes by titles, but by the most general description of the subject-matter, and no doubt this act of Elizabeth was by it adopted, not as the common law of North Carolina, for that was provided for by a different section, but as a part of

the *statutory* law of North Carolina, and as such we have inherited it from our mother state. It is, then, with its succeeding alterations, and as we now have it, a part of the statutory and not the common law of Tennessee. This jurisdiction of the probate court, therefore, is not a "common-law jurisdiction" in the sense of our naturalization laws, and will not support any claim of that court to act under them.

The same reasoning precisely applies to the jurisdiction of partition, which is by the statute rather equitable than legal, if there be any distinction in the matter. The act of 31 & 32 Henry VIII. c. 32, was adopted by North Carolina as a part of its *statutory* laws, and the right and remedy have been regulated by our Code, so that, like the others above mentioned, they remain purely statutory, and are in no sense "a common-law jurisdiction" in this state, whatever may be said of them in other states. There being no estates in coparcenary in Tennessee, the common-law jurisdiction for their partition cannot aid the jurisdiction of the probate court in this matter. Mart. Laws N. C., *supra; Glasgow* v. *Smith,* and note, *supra; Sawyers* v. *Cator,* 8 Humph. 256; 3 Meigs, Dig. (2d Ed.) § 2062 *et seq.;* 2 Bouv. Dict. tit. "Partition;" Tenn. Code, (T. & S.) 316*h,* 3262–3322; Tenn. Code, (T. & S. Ed.) 2010, 2420; *Strong* v. *Ready,* 9 Humph. 168; 1 Washb. Real Prop. 650. And these views are, in my judgment, fully supported by cases in the supreme court of the United States, describing what is meant in federal jurisprudence by the "common law." *Parsons* v. *Bedford,* 3 Pet. 433; *Irvine* v. *Marshall,* 20 How. 558, 564.

The applicant may now make his first declaration of intention to become a citizen, if he choose, in this court, but he cannot be finally naturalized on this evidence of having heretofore declared it in a court of competent jurisdiction. Application refused.