FIDELITY MUT. LIFE ASS'N v. JEFFORDS.

(Circuit Court of Appeals, Fifth Circuit. March 19, 1901.)

No. 944.

1. LIFE INSURANCE—CONTRACT—LEX LOCI.

A contract of life insurance, made and delivered and the premiums paid in the state where the insured resided, is a contract of that state and governed by its laws.

2. SAME—APPLICATION—ANSWERS—WARRANTIES OR REPRESENTATIONS.

Answers to questions propounded in an application for life insurance, unless clearly shown by the form of the contract to have been intended by both parties to be warranties, to be strictly and literally complied with, are to be construed as representations.

3. SAME—MISSTATEMENTS AND CONCEALMENTS—EFFECT OF GOOD FAITH.

Code Ga. 1895, § 2097, requires applications for life insurance to be made in the utmost good faith, and declares that representations are considered as covenanted to be true, and that a variation by which the

nature, extent, or character of the risk is changed will void the policy. Section 2099 declares that failure to state a material fact, if not done fraudulently, does not avoid the policy, but the willful concealment thereof, enhancing the risk, will avoid it. Section 2101 avoids a policy for willful misrepresentation as to any material inquiry made. *Held*, in view of this statute, that an untrue statement by insured that he did not have consumption, or his omission to name, when requested, all physicians who examined him within a specified time, would not avoid his policy, if his answers were made in good faith, and the misstatement or omission was not willful, but due solely to his ignorance or failure to recollect, notwithstanding he distinctly certified that his answers were true, and agreed that, if any concealment or untrue statement or answer be made, the policy should be void.

**4. SAME—ISSUANCE FOR BENEFIT OF BROTHER.**

A life insurance policy may be taken out for the benefit of a brother of the insured, and it is immaterial what arrangements are made between them for the payment of premiums.

**5. SAME—ACTION ON POLICY—INSTRUCTIONS—TESTIMONY PREPARED BY INSURANCE INSPECTORS.**

In an action on a life insurance policy, the court properly cautioned the jury to closely scan evidence prepared by defendant's inspectors, who offered in evidence written statements which they had obtained, tending to contradict witnesses for plaintiff.

In Error to the Circuit Court of the United States for the Southern District of Georgia.

This is an action on a life insurance policy. It was brought by Thomas C. Jeffords, a citizen of Georgia, against the Fidelity Mutual Life Association, a corporation under the laws of Pennsylvania. The action was brought in the city court of Savannah, Ga., and was removed into the court below on the application of the association. It is alleged in the petition that on December 29, 1894, the association issued to Martin A. Jeffords its policy of insurance, promising to pay $10,000 to Thomas C. Jeffords, and $3,000 to Edna Jeffords, within 90 days after satisfactory proof of the death of Martin A. Jeffords. It is averred that the insured and beneficiaries had complied with all the terms of the policy; that on July 29, 1896, Martin A. Jeffords died; that due notice of his death was given on September 3, 1896; and that a demand for payment had been made and refused notwithstanding 90 days had elapsed since furnishing proofs. A copy of the insurance policy was made part of the petition. The association filed the following pleas: First. A general denial that it was indebted. "Second. For further plea in this behalf, this defendant avers that the said plaintiff ought not to have and maintain his action aforesaid, for that the said alleged contract of insurance is void and of no effect, and not binding upon this defendant, because the same was obtained by fraud practiced upon this defendant by Martin A. Jeffords, in this: That the said Martin A. Jeffords, in making application for insurance on his life with this defendant, made the statements in such application a part of his contract or policy of insurance which is sued on in this case, and thereby covenanted to and with this defendant that he was at the time in good health and free from any and all diseases, sicknesses, ailments, or complaints, trivial or otherwise, except as therein stated, and that there was nothing therein stated which excepted pulmonary consumption, when in truth and in fact the said Martin A. was at the time afflicted with pulmonary consumption; whereby the said Martin A. warranted to this defendant in said contract that he was free from said diseases, sicknesses, ailments, and complaints, which warranty the said Martin A. then and there did violate and break, and did deceive and defraud this defendant; and this defendant avers that for this reason said contract is void and of no effect. Third. And for further plea this defendant saith that the said contract, the same purporting to be a policy of insurance, is void, for that the same was obtained from this defendant by the fraud practiced upon it by the said Martin A. Jeffords, in this: The said Martin A. Jeffords, in order to induce this defendant to enter into said

contract of insurance, did represent to this 'defendant that he was at the time in good health, and free from any and all diseases, sicknesses, ailments, or complaints, trivial or otherwise, except as therein stated, and there was nothing therein stated which excepted pulmonary consumption, when in truth and in fact the said Martin A. was at the time afflicted with pulmonary consumption. And in this: That this 'defendant was further induced to enter into said contract by the representation made to it at the time by the said Martin A. that he had not consulted or been prescribed for by any other physicians or medical men during the last ten years next preceding the making of said application, except Dr. T. C. Jeffords, about three months prior to the application, for cold, and Dr. McRae, two years prior thereto, for pleurisy, when, in truth and in fact, on the 20th of February, 1894, which was about ten months (10) before said application, the said Martin A. had consulted and been prescribed for professionally by Dr. R. E. Hinman, who was a practicing physician at Atlanta, Ga., and said Dr. R. E. Hinman had informed him, the said Martin A., then and there, that he had incipient tuberculosis, and prescribed for him a change of residence to New Mexico or Arizona; and when, in truth and in fact, during the fall of 1894, the said Martin A. had consulted and been prescribed for professionally by Dr. Floyd McRae, a practicing physician of Atlanta, Ga., who told him he had consumption, and advised a change of residence from the city, and that he live in the open air. This was in the late fall or early winter of 1894, only a few weeks before the said representation above referred to was made to this defendant. And this defendant avers that all of these representations were material, all of them were false, and were known to said Martin A. to be false at the time he made them, and were willfully and corruptly made to deceive and. defraud this defendant, and did deceive and mislead this defendant, who relied upon the same, all of which this defendant is ready to verify. Fourth. And, for further plea in this behalf, this defendant saith that the said Thomas C. Jeffords ought not to have and maintain his action aforesaid, for that this contract of insurance now sued upon by the said Thomas C., the plaintiff, was gotten up by him, the said Thomas C., for his own benefit; that he conducted the negotiations, paying up all premiums and other charges, and that he persuaded and induced the said Martin A. to procure the said insurance for the benefit of him, the said Thomas C.; that the introduction of the said Edna C. Jeffords into the contract as a beneficiary was an afterthought, and was done merely to try and save appearances, it being the original purpose of said Thomas C. to take out a policy payable only to himself; and this defendant avers that the said Thomas C. well knew at the time that his brother Martin A. had consumption, and could not live long, and the said Thomas C., being himself at the time one of the medical examiners for this defendant, represented to the other physician who took his place in the examination of the said Martin A. that the said Martin A. was sound and free from all diseases, and thereby induced said physician to forego and omit to make a complete examination himself of the said Martin A.: all of which this defendant is ready to verify."

These pleas were subsequently amended by alleging that the association was a mutual insurance company; that each insurer became a member of the association; and that its rules and regulations became parts of the policy. According to these rules, it was alleged that every person desiring to become a member must make an application; that the truthfulness of the statements contained in the application should be the basis of the policy; that no person was eligible to membership who was not in all respects in good health; and that Martin A. Jeffords on December 21, 1894, made such application for insurance and membership, and therein warranted the truthfulness of the statements made and their materiality.

On the trial, the policy, together with the application, was offered in evidence. The policy was correctly described in the declaration as above stated. The material parts of it that are necessary to an understanding of the case are the following: "The Fidelity Mutual Life Association, in consideration of the application for this policy, which is made a part hereof, a copy of which is hereto attached, and the payment to said association of forty and $4/100$ dollars on the 29th days of the month of December, March, June, and

September for the period of twenty years from the date thereof, etc., does hereby receive Martin A. Jeffords, of Sylvester, county of Worth, state of Georgia, as a member of said association, and issues this policy of insurance," etc., "subject, however, to all the requirements hereinafter stated and the conditions hereon indorsed, which are hereby referred to and made a material part of this contract." The following is one of the conditions forming part of the policy: "If any statement contained in the application on which this policy is issued be untrue in any respect, then this policy, except as herein provided, shall be ipso facto null and void."

The applications signed by the insured contained the following among other declarations and statements:

"(1) I hereby apply to the Fidelity Mutual Life Association of Philadelphia, Pa., for a policy of insurance, to be issued in pursuance of this application." "(3) That I am now in good health, and am free from any and all diseases, sickness, ailments, or complaints, trivial or otherwise, except as here stated: Yes." "(5) That I have never had or been afflicted with any sickness, disease, ailment, injury, or complaint, except as here stated: Pleurisy, about two years ago; cold, about one week, about six months ago. (6) That the last physician I consulted or who prescribed for me was Dr. T. C. Jeffords, of Sylvester, Ga., about three months ago, for the sickness here stated: Cold, about one week, about six months ago. (7) That I have not consulted or been prescribed for by any other physician or medical man during the last ten years, except as here stated: Dr. McRae, Atlanta, Ga.; pleurisy, about two years ago. I hereby agree and bind myself as follows: That the truthfulness of the statements above made or contained, by whomsoever written, are material to the risk, and are the sole basis of the contract with the said association; that I have signed this application in my own proper handwriting; * * * and that, if any concealment or untrue statement or answer be made or contained herein, then the policy of insurance issued hereon and this contract shall be ipso facto null and void."

The evidence showed that Thomas C. Jeffords was the brother, and that Edna Jeffords was the wife, of the insured. The application for insurance was made December 21, 1894, the policy was issued December 29, 1894, and the insured died of consumption July 29, 1896. The evidence was conflicting as to whether he had consulted and been prescribed for within the last 10 years by other physicians besides those which he named. The evidence was conflicting as to his condition of health at the date of the application. Some of the evidence tended to show that he was then afflicted with "incipient tuberculosis": other evidence tended to show he was in good health, and that he did not at that time have consumption.

The plaintiff in error requested the court to give the following charges, and reserved an exception to the refusal to give each:

"(1) Under the law of this state, as set forth in section 2097 of the Code, the representations contained in an application for a policy of insurance are covenanted to be true. If you believe that on the 21st of December, 1894, when Martin A. Jeffords made application for insurance, he was then afflicted with pulmonary consumption, he stated in his application that he was free from disease, trivial or otherwise, then I charge you that this would void the policy, and the plaintiff would not be entitled to recover, for the reason that consumption is a disease which, from its nature, does affect the extent of the risk. This would be true also without regard to the good faith of the applicant, as, he having covenanted that the representations were true, the question of good faith does not enter into it.

"(2) I charge you, further, that if you believe he did consult Dr. Hinman in February, 1894, or Dr. McRae in October, 1894, and that he stated in his application that he had not consulted any physician in ten years, except Dr. Floyd McRae two years before for pleurisy, then this was a material misrepresentation (which also conflicted with his contract and with the by-laws of the association), because it shut out from the company a very high source of information, which it was entitled to, as to his physical condition, and would defeat the right to a recovery, provided you also believe that these doctors had actually found that he had consumption at the time they examined him.

"(3) If you believe from the evidence that the deceased, Martin A. Jeffords, consulted Dr. R. E. Hinman, as a physician, during the month of February, 1894, and that the said Dr. R. E. Hinman, in the capacity of a physician, and at the request of said Martin A. Jeffords, made a physical examination of him, you will find for the defendant."

The refusal to give each of these three charges is assigned as error.

The plaintiff in error reserved exceptions to each of the following charges given by the court:

"(1) Now, with regard to that plea [referring to the plea that the insured had consumption], I charge you, as matter of law, that if the proof fails to satisfy you, to the extent which the law heretofore read to you has defined, that Martin A. Jeffords intentionally misled the defendant company; that he knew, or had reason to believe, that he had consumption at the time of his application; if it fails to show you that he knew, or had reason to believe, he had consumption, and, thus knowing and believing, he intentionally and fraudulently withheld the facts from the defendant company,—you would not be justified in defeating a proper recovery on account of that plea.

"(2) With the provisos I have already expressed, your inquiry, then, on this particular plea is this: Has the defendant produced such a preponderance of proof as will satisfy your minds that Martin A. Jeffords knew, or had reason to believe, that he was afflicted with consumption at the time the insurance was applied for, and that he fraudulently withheld the facts from the company?

"(3) A man cannot be held to warrant that he is free from disease as a prerequisite to a valid contract of insurance. If he acts in good faith, and gives all the information asked, and in doing so states the facts truly as he understands them, it is all the law requires of him, or of the beneficiary of the policy for the recovery of the amount which he has thus attempted to secure.

"(4) The court charges you that if you believe from the evidence that the insured, Martin A. Jeffords, had consulted Dr. Hinman, or had been prescribed for by him in February, 1894, and willfully and fraudulently withheld this fact from the defendant company, it would void the policy of insurance, and neither his brother nor his widow could recover thereon, and you would be obliged to find for the defendant.

"(5) I instruct you that the proof must preponderate to show, not only the fact of such consultation or prescription, the withholding of the fact, and that it was knowingly done and with a fraudulent purpose. If this fact existed, and it was merely omitted by the insured, and if the proof fails to satisfy you, under the rules I have given you, that he made the other fraudulent and material concealments charged as to physical condition, under these circumstances the omission would not be of such a character as would void the policy of insurance.

"(6) In other words, the presence or absence of good faith on the part of Martin A. Jeffords throughout would be exceedingly important in determining whether or not the omission to mention the alleged consultation and prescription of Dr. Hinman would be of that character which would void the policy. If you are justified in concluding from the evidence that it was a mere case of honest forgetfulness, I charge you that it would not, in itself, render the policy void.

"(7) To sum up my instructions upon this point. I repeat that if, with regard to the consultation and prescription with Dr. Hinman, you believe that the insured was guilty of fraudulent misrepresentations to the company, you ought to find against the plaintiffs, but, if you believe that it was a case of honest omission, you ought not to find against the plaintiffs on that plea.

"(8) To sum up the instructions in this case, notwithstanding its great prolixity, the multitude of witnesses, and the multitude of pleas, the true issue is this: Did Martin A. Jeffords apply for this policy of insurance honestly and in good faith? Did he truthfully and sincerely communicate to the company the answers to the questions propounded which were material for its protection? If he did this, withholding nothing fraudulently, concealing nothing fraudulently, and not intending to deceive, his widow is entitled to recover the amount stipulated in the policy, with interest thereon from the

date of proofs of loss and costs of the suit which she has brought. If, on the other hand, the defendant has produced evidence which preponderates to show that Martin A. Jeffords sought to secure insurance dishonestly, knowing or having reason to believe that he was afflicted with consumption, which knowledge he did not communicate to the company, but fraudulently withheld it, and knowing that he had been examined by a physician other than Dr. McRae and his brother, and fraudulently withholding that fact with the purpose of misleading the company, his widow would not be entitled to recover, and you should find for the defendant, with costs of suit on the action brought by her. The same statement is applicable with regard to the action brought by Thomas C Jeffords for the amount stipulated to be due him on the policy of insurance.

"(9) I charge you that, whether Thomas C. Jeffords had such an interest or not, his brother Martin A. Jeffords had the right to insure his own life in favor of Thomas C. It appears from the policy that this was done, and, if the insurance company accepted the payment of the premiums from Martin A. Jeffords, they cannot now be heard to say that they did not insure Martin A. for the benefit of his brother, and that he had no insurable interest. The company understood the terms of its own policy. It knew it was payable to Thomas C. Jeffords. It knew it was taken out by Martin A. Jeffords, and, not having raised the objection when these facts were ascertained, its plea on that subject cannot now be maintained.

"(10) You heard the testimony of the other witnesses with regard to one or both of them [referring to the 'inspectors,' Gary and Milliken, who represented the life association in procuring evidence], and, while their business is legitimate, the court thinks it proper to instruct you that you should closely scan evidence prepared by them, or with their assistance, or under their direction, personal presence, or influence, and not conclude the rights of the parties thereby unless it is right and proper, in view of all the evidence in the case. It is perhaps fair to presume that these inspectors are experts in their business, and it is the duty of the jury to carefully consider the statements of Mrs. Jeffords and Dr. Hall, and to determine, in view of all the evidence, whether they were obtained by the inspectors, or either of them, by personal influence, or by promises of settlement of a particular claim, or by threats, or by the skillful use of language in writing, and whether or not they gave a coloring to the statements of the witness or witnesses which they or either of them did not intend, and by which an improper advantage was taken of that party or witness. This would be especially the duty of the jury if it appears from these statements that, by hers, Mrs. Jeffords wholly surrenders her right to any claim against the company, and practically admits that her policy was void, and from the statement of Dr. Hall that he admits, or is made to admit, facts which would indicate his carelessness as a physician and his unfitness as a medical examiner for the company." The giving of each of these ten charges is assigned as error.

The trial resulted in a verdict for Thomas C. Jeffords for $9,969.20, on which judgment was entered. This writ of error is sued out by the Fidelity Mutual Life Association to reverse that judgment.

Alex C. King and Pope Barrow (King & Spalding and Barrow & Barrow, on the brief), for plaintiff in error.

Fleming G. Du Bignon (Du Bignon & Stephens, on the brief), for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). 1. The failure of the court to give the three charges requested by the plaintiff in error, and the giving of the first eight against its objection, all of which we have set out in full, raised practically the same question. The distinguished counsel for the plaintiff in error contend that the application for insurance was made the foundation of the policy, and that its statements are covenanted to be true, and that if

they are not true the policy is void; that is, it is void whether the untruth be intentional or not. They assert that under the Georgia law the application for insurance in this case warrants every material statement to be true, and that the question of good faith is not involved. The charge of the court was upon the theory that the applicant for insurance in this case did not warrant the truth of every material statement in his application, and that an honest mistake, even as to a material fact, would not void the policy. On the one hand, it is contended that if the insured was afflicted with "incipient tuberculosis" at the date of his application, although he believed he was free from disease, that the policy would be void. On the contrary, it was held by the court below that, even if he had such disease, if he was entirely ignorant of the fact, and answered the inquiry in reference to his condition in good faith, the policy would be valid. Again, it is contended that if the insured answered that he had been examined only by certain physicians within the last 10 years preceding his application, failing to name other physicians who had examined him, this omission would be fatal to the policy, although he answered in good faith, having failed to remember his examination by other physicians. On the contrary, it was held that an honest omission to name all the physicians who had examined him, if he answered in good faith, giving his best recollection and making no willful misrepresentation or fraudulent concealment, would not void the policy. These are the conflicting contentions raised by the refusal to give the charges asked and by the giving of the charges to which exceptions were taken.

The contract of insurance was made and delivered, and the premiums paid, in the state of Georgia, where the insured resided. It is therefore a Georgia contract, and is governed by the laws of that state. Society v. Pettus, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497. The following are sections of the Code of Georgia of 1895:

"Sec. 2097. Application, Good Faith. Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed, will void the policy.",

"Sec. 2099. Concealment. A failure to state a material fact, if not done fraudulently, does not void; but the willful concealment of such a fact, which would enhance the risk, will void the policy."

"Sec. 2101. Willful misrepresentation by the assured, or his agent, as to the interest of the assured, or as to other insurance, or as to any other material inquiry made, will void the policy."

These sections are made applicable to both life and fire insurance. Code Ga. § 2117.

It may be stated as a general rule that answers to questions propounded to insured in an application for insurance, unless they are clearly shown by the form of the contract to have been intended by both parties to be warranties to be strictly and literally complied with, are to be construed as representations and not as warranties. Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644. One of the statements that the insured was required to make to obtain the insurance was that he was "free from any and all diseases,"

except as stated.  Placing the construction upon the application which the plaintiff in error contends for, the policy would be made void if the insured had a disease material to the risk, although he was entirely ignorant of the fact.  It might be a disease so undeveloped that it could not be discovered by an expert physician, and yet if it afterwards developed, and it could be shown that the germs of the disease were active in the insured at the date of his application, the policy would be made void.  We cannot believe that this contract is fairly susceptible to such construction.  Such a construction ought to be avoided unless clearly demanded by legal rules.  In the absence of explicit and unequivocal words requiring such interpretation, the court should not conclude that the insured took a life policy with the distinct understanding that it should be void, and all premiums paid forfeited, if at the time of his application he had a disease of which he was entirely unconscious.  Moulor v. Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447.  We do not think that it was the purpose of the insurers to exact from the insured, as a condition precedent to a valid contract of insurance, a guaranty against the existence of diseases of which he had no knowledge, and which even a skillful specialist, on careful examination, would be unable to detect.

We are not unmindful of the fact that the insured distinctly certifies that the statements in his application are true, and that he agrees that, if any concealment or untrue statement or answer be made, the policy of insurance shall be void.  Referring to the Georgia statute, and probably without the statute, concealment means "willful concealment."  By that statute it is only the willful misrepresentations and willful concealments that affect the policy.  And when the insured agrees that the policy shall be void if it contains any untrue statements, what does he mean?  He surely means "untrue," in the sense of the law which governs the contract.  He means, to quote the Georgia statute, that there is no willful concealment and no willful misrepresentation, and that his statements are made in the utmost good faith.  Construing a life policy, Mr. Justice Harlan asked what was meant by true and untrue answers, and he answered the question, saying:

"In one sense, that only is true which is conformable to the actual state of things.  In that sense, a statement is untrue which does not express things exactly as they are.  But, in another and broader sense, the word 'true' is often used as a synonym of 'honest,' 'sincere,' 'not fraudulent.'  Looking at all the clauses of the application, in connection with the policy, it is reasonably clear—certainly the contrary cannot be confidently asserted—that what the company required of the applicant, as a condition precedent to any binding contract, was that he would observe the utmost good faith towards it, and make full, direct, and honest answers to all questions, without evasion or fraud, and without suppression, misrepresentation, or concealment of facts with which the company ought to be made acquainted, and that by so doing, and only by so doing, would he be deemed to have made 'fair and true answers.'"  Moulor v. Insurance Co., 111 U. S. 335, 345, 4 Sup. Ct. 466, 28 L. Ed. 447.

The application in the case at bar does not contain the word "warranted."  It purports to be a declaration or statement, and not a warranty.  In Moulor v. Insurance Co., supra, the word "warranted" was used in the application which was part of the contract sued on.

The language in the application for insurance in that case was: "It is hereby declared and warranted that the above are fair and true answers to the foregoing questions." Notwithstanding this language, the court held that there was not a warranty in the strict sense that would make the contract void if there was a statement not literally true made in answer to the questions. The court held that, in the absence of intentional misstatement or fraudulent misrepresentation, the contract of insurance was valid.

Recently, the supreme court of Georgia has had occasion to construe section 2099 of the Georgia Code. In the court below the request had been made for a charge that the policy would be made void if the applicant failed to give the names of other insurance companies to which he had applied for insurance. He had given the name of one, when he had applied to several. A charge was also asked that the policy would be made void because he had given the name of only one physician who had attended him during the last 10 years, when, in fact, during that time he had been attended by several others. The trial court refused to give these charges, and the refusal was assigned as error in the supreme court. It was held, Fish, J., delivering the opinion of the court and all the justices concurring, that the court did not err in refusing to give the charges. "It will be seen," said the learned justice, "that, if the instruction requested correctly stated the law, a policy would be avoided because of a mere omission upon the part of the assured to state a material fact, without reference to the motive by which he was influenced in omitting to make such statement. An omission to state is the equivalent of a failure to state, and by our Civil Code (section 2099) it is expressly provided as follows: 'A failure to state a material fact, if not done fraudulently, does not void; but the willful concealment of such a fact, which would enhance the risk, will void the policy.' The request under consideration was not adjusted to the section of the Code we have just quoted, because if the failure to state the fact was the result of an oversight or other cause, and was not done fraudulently, it would not avoid the policy. The omission from the request of the word 'fraudulently' put it in direct opposition to the Code provision above referred to, and it was therefore properly refused by the court." Association v. Farley, 102 Ga. 720, 744, 29 S. E. 615.

2. Martin A. Jeffords applied for and obtained the policy on his own life. He is conclusively presumed to have an insurable interest in his own life. Bliss, Ins. § 17. He directed who should be the beneficiaries. His wife was to receive $3,000, and his brother, Thomas C. Jeffords, $10,000. This latter sum, by agreement between the parties, was "to protect his child or children." He had one child to survive him. The first premium was paid out of the money of Martin A. Jeffords. The other premiums were paid by Thomas C. Jeffords for his brother. The insurance company receipted for the money as paid by Martin A. Jeffords. The fact that Thomas C. Jeffords paid the premiums did not invalidate the policy. On the facts stated, it was not a wager policy. A man may take out a policy of insurance upon his life for the benefit of his brother, and it is immaterial what arrangement is made between them for the payment

of the premiums. Insurance Co. v. France, 94 U. S. 561, 24 L. Ed. 287; Union Fraternal League v. Walton, 109 Ga. 4, 34 S. E. 317, 44 L. R. A. 424. It follows that the court did not err in giving charge numbered 9.

3. The court charged the jury that they should closely scan evidence prepared by William E. Gary and R. C. Milliken, inspectors of the defendant in error. Gary obtained a written statement of Mrs. Jeffords, the widow of the insured, and Milliken obtained a written statement from Dr. Hall. These statements were offered in evidence, and tended to contradict the evidence of Mrs. Jeffords and Dr. Hall given on the trial. The charge referred to is numbered 10, and is set out in full in the statement of the case. The giving of this charge is assigned as error. William E. Gary, one of the inspectors, sought and had two interviews with Mrs. Jeffords,—one in Georgia and one at her home in Florida. Gary, on cross-examination, stated that he informed her of the "result" of some suit recently brought against an insurance company where the defense of fraud and conspiracy was made, and he told her "that if the company refused to pay her she could not recover * * * unless the courts reversed themselves. I cited cases, no doubt." He denied making any threats, saying: "I have been in this business twenty years, and I never make any threat in any case, sir." An important question in the case was whether Dr. Hinman had examined the insured after the policy was issued, or in 1894, before it was issued. Gary testified that Mrs. Jeffords said "it was in 1894." Mrs. Jeffords testified as to the interviews. She said that "Mr. Gary seemed very sympathetic"; that the paper she signed was written in his presence, and partly from his dictation; that Gary assured her that her claim would be paid in full; and that she was very much agitated when she wrote the paper. The statement signed by Dr. Hall, which was offered in evidence, was obtained by the other inspector, R. C. Milliken. Dr. Hall's evidence tended to show that the statement was not entirely correct. Milliken approached Hall, and asked him to sign the paper. Dr. Hall testified:

"Q. Under what circumstances did they get that statement from you? A. He [Milliken] was going over there. Seemed to be gathering up proofs for his side of the case. He was wanting to write them up and outline the manner in which they might not be mistaken, and that my interrogatories might corroborate such statement as I made to him. And at that time I told him, when he drew up those papers, that some things are not fresh in my mind at the moment, and I told him at the time, if I recollected things more clearly, I should correct them. Q. You reserved the right to make corrections? A. Yes, sir."

Dr. Hall's evidence tended to show that the statement prepared by Milliken and signed by him was materially inaccurate.

In this state of the evidence, we think the court was amply justified in giving the instructions. These inspectors were the agents of the plaintiff in error. They were engaged in preparing a defense in this case. An insurance company can only act through its agents. It is, as the learned trial judge said, a legitimate business to investigate the facts of a case that will probably be litigated. Still, the fact that agents so employed are likely to be partial to their princi-

pals is well known. And, if the mode of obtaining admissions indicates that a skilled and experienced person has unduly influenced or unfairly induced admissions, such facts should be closely scanned by the jury, and should greatly affect the weight to be given to the admissions. The position of these inspectors or agents preparing a case is analogous to that of an attorney performing the same service. If an attorney becomes a witness in a case he is trying, it is perfectly proper for the jury, in weighing his evidence, to consider his relation to the case, and his conduct in procuring evidence. In common-law courts it was formerly doubted whether a lawyer retained in a cause, and who was taking part in the trial, was a competent witness (1 Whart. Ev. § 420); and in the civil law the advocate or procureur of a party was not received as a witness. "Their testimony," says Pothier, "would be liable to the suspicion of partiality, if they were witnesses in favor of their parties, and there would be an indecency in admitting them as witnesses against them." 1 Poth. Obl. (Evans) 405. Referring to the proof of admissions proved by an attorney in the cause as made to him by the opposing party, Sanford, J., speaking for the court, said: "Moreover, testimony by an attorney of such admissions, made to him by the opposite party, affecting a really doubtful or litigated point, are always regarded with extreme suspicion and distrust by both courts and juries." Little v. McKeon, 1 Sandf. 607, 609. The parties themselves, and, of course, their agents and attorneys also, are now competent witnesses. Their evidence goes to the jury as that of any other witnesses. The rules that once excluded them as witnesses have long ceased to be rules, but their evidence goes to the jury to be considered by them in view of the witness' relation to the case. The question of credibility of every witness is for the jury. As the jury should consider such relation, there can be no error in the court's properly calling it to their attention. The court, we think, did not err in giving this charge. The judgment is affirmed.