ROYAL UNION MUT. LIFE INS. CO. v. WYNN et al.

WYNN v. ROYAL UNION MUT. LIFE INS. CO.

(Circuit Court, N. D. Georgia. February 11, 1910.)

No. 61.

**1. EQUITY (§ 195*)—CROSS-BILL—DETERMINATION OF CONTROVERSY.**

Where, pending suit by an insurance company to cancel a policy for misrepresentation, the insured died, and by supplemental bill the beneficiary was restrained from bringing any action on the policy, his right to recover thereon was proper matter for a cross-bill in order that the court having taken jurisdiction for one purpose might determine the whole matter.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 446–449; Dec. Dig. § 195.*]

**2. INSURANCE (§ 125*)—POLICY—CONSTRUCTION—WHAT LAW GOVERNS.**

A bill to set aside a life insurance contract made in Georgia, insuring the life of a resident of that state, and a cross-bill to recover the proceeds of the policy, must be determined in accordance with the law of that state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 173–175; Dec. Dig. § 125.*

What law governs insurance policies, see notes to Corley v. Travelers' Protective Ass'n, 46 C. C. A. 287; Globe & Rutgers Fire Ins. Co. of New York v. David Moffat Co., 83 C. C. A. 100.]

**3. INSURANCE (§ 297*)—LIFE POLICY—MISREPRESENTATIONS.**

Where insured was not an excessive drinker, and his death was not caused by his use of intoxicants, his misstatement of the kind or quantity of liquors consumed daily, or his failure to state certain facts with reference thereto not material to the risk, was no defense to the policy, nor ground for voiding it, under Civ. Code Ga. 1895, §§ 2097–2099, 2101, regulating the effect of concealment and misrepresentations in an application for insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 676; Dec. Dig. § 297.*]

Bill by the Royal Union Mutual Life Insurance Company against David Wynn, Jr., and another, and cross-bill by Thomas W. Wynn against the insurance company. On report of a special master and exceptions thereto. Exceptions overruled, and decree in accordance with the report.

Goetchins & Chappel, for Insurance Company.

Wimbish, Watkins & Ellis, T. T. Miller, and E. J. Wynn, for David Wynn and others.

NEWMAN, District Judge. The record in this case shows that on August 17, 1905, the Royal Union Mutual Life Insurance Company (hereinafter called the "insurance company") filed in this court its bill of complaint against David Wynn, Jr., and Thomas W. Wynn, alleging, in substance: That it is a corporation, citizen, and resident of the state of Iowa, and defendants are citizens and residents of Muscogee county, Ga. That complainant company was organized and incorporated for the purpose, among other things, of making assurance upon the lives of individuals upon the mutual plan, with power, under its

articles of incorporation, to make all necessary and proper contracts, and especially to do the acts and make the contract herein set forth. That on or about the 1st day of July, 1898, the defendant David Wynn, Jr., made application in writing to the insurance company for a policy of insurance in the amount of $5,000, and nominated Thomas W. Wynn, his brother, as beneficiary therein. That on or about the said date, said David Wynn, Jr., was medically examined, such examination. having been reduced to writing and when signed by the said David Wynn, Jr., all in pursuance of the custom and rule of all life insurance companies, for the purpose of protecting themselves from fraud, and to require that not only the applicant make and sign the written application for such insurance, in which they shall state all matters and answer all questions asked by the insurer, relating in any way to their health, insurance history, family history, insurability, and probable longevity, but that they shall also be examined by some regular physician, who shall write down the answers to all questions relating to the health, life, habits, conditions, family history, insurability, and probable longevity of the applicant, and that the questions so asked and answered shall be signed by the applicant, and the physician to certify to the insurer the result of his examination. That in pursuance of such application and medical examination, and relying upon the truth and accuracy of the statements therein contained, the insurance company, on July 1, 1898, issued to the said David Wynn, Jr., a policy of insurance, insuring his life in the sum of $5,000, for the benefit of Thomas W. Wynn. A copy of the policy is attached.

The bill then alleges certain facts with reference to the representations made by Wynn as to his physical condition and the diseases he had had, as to which there is no serious insistence here, as I understand it, and there certainly could not very well be such insistence under the facts. It is then alleged that David Wynn, Jr., represented his practice as to the use of spirits, wines, malt liquors, or other alcoholic beverages, was that he used only a few drinks of beer daily, one or two glasses of beer at morning lunch, and the same at evening lunch, and some days none at all, while in truth and in fact he was in the habit of drinking both beer and whisky, and these in large and immoderate quantities and to excess; and that, in truth and in fact, he admitted in writing over his own signature, in an application made for the purpose of procuring insurance in the Mutual Life Insurance Company of Kentucky, on or about the 16th day of July, 1898, that his habit was to drink three ounces of whisky daily, and in addition to this to take one glass of beer daily; that all of these statements were false, and made fraudulently for the purpose of procuring the policy of insurance from the insurance company; and that these false answers and representations were upon matters material to the risk to be assumed by the insurance company, and if truthful disclosures had been made by the said David Wynn, Jr., as to them, no policy of insurance would have been issued to him.

They allege that, relying upon the truth of Wynn's statements in this respect, the policy was issued. It is then alleged that prior to the first anniversary of the policy, and before the second premium thereon

was due, the insurance company, from information given to it, had reason to believe, and believing, that David Wynn, Jr., had falsely represented in the application and medical examination as to his daily habit in the use of intoxicants and as to his health record, as soon as it learned of the same, made tender to David Wynn, Jr., of the full amount of the first annual premium, $109.55, and demanded the surrender of the policy; that Wynn refused to accept the tender or to deliver to it the policy, and the insurance company thereupon paid into court the sum of $109.55, for the purpose of keeping its said tender good; that David Wynn, Jr., and Thomas W. Wynn have failed and refused to surrender the policy and claim it is in full force and effect. The insurance company then said it had no remedy at law, and prayed a decree of the court that the policy be canceled, annulled, and held for naught.

The defendants filed a general demurrer to the bill, and on the same day the defendants filed a general answer, in which they admitted the application for insurance, the medical examination, the issuance of the policy and the correctness of the copy attached to the pleadings. The answer otherwise denied all of the material allegations of the bill, as to any false and fraudulent representations made by David Wynn, Jr.

Subsequently, on December 5, 1905, the complainant filed its replication and certain exceptions to the defendant's answer. On the 31st of January 1906, the complainant filed an amendment to its original bill, in which it alleged that on the 29th day of November, 1905, subsequent to the filing of the original bill, David Wynn, Jr., died, intestate, and that there was no administration on his estate, nor was there likely to be; that the other defendant, Thomas W. Wynn, being the beneficiary of the policy, was the only one interested therein or in the matters and things complained of therein. Certain other matters in the amendment are not material here. The amendment contained a prayer for an injunction against Thomas W. Wynn, enjoining him from suing on the policy of insurance and from assigning or transferring the policy until such time as the court might hear and determine the question of granting a permanent injunction, and until the further order of the court. The amendment was allowed by the court, and an order was made that Thomas W. Wynn be restrained, until the further order of the court, from suing on the policy.

On the 5th day of March, 1906, the defendant Thomas W. Wynn filed his answer, and the defendant admitted the statements made as to the death of David W. Wynn, Jr., intestate, and the lack of administration on his estate, and that he (Thomas W. Wynn) was his beneficiary under the policy set forth in the original bill.

On the 31st day of March, 1906, the complainant renewed its replication of the original answer and extended the same to the amended bill.

On the 7th day of May, Thomas W. Wynn filed a motion to dismiss the bill for certain reasons therein set forth.

Various orders were entered, hearings had, exceptions answered, and motions to dismiss taken up at different times, but no disposition

appears to have been made of the same, and the case was continued from time to time.

On the 24th of October, 1908, Thomas W. Wynn, the surviving defendant in the original bill, filed his motion to allow him to file a cross-bill, alleging that he was enjoined from suing on the policy of insurance described in the pleadings in the case, and that he believed he had a good cause of action on the insurance policy, and that the original complainant in the cause was a nonresident of the state of Georgia, and was represented by counsel throughout the case, and moved the court for an order allowing the filing of the cross-bill and for substitute service on the insurance company. On the same day Thomas W. Wynn filed his cross-bill. In the cross-bill he went into the facts of the case somewhat and set up his rights under the policy and that by reason of the injunction he could not sue at law, and concluded with a prayer for a decree in his favor for the amount of the policy. An order was made by the court allowing the filing of the cross-bill.

A demurrer was filed by the insurance company to this cross-bill on the ground that the matter set up in the cross-bill was not germane to the original bill, and the relief sought could not be had by a cross-bill, and prayed that the cross-bill be dismissed. On the same day it filed its answer to the cross-bill, reaffirming the allegations and averments contained in the original bill and the amendment thereto.

The whole case, by consent of all parties, was referred to a special master to report upon the issues of law and fact involved. No ruling had been made when the case went to the master on the demurrer to the cross-bill. The report of the master has been filed, finding in favor of Thomas W. Wynn, and that he have a decree against the insurance company for the amount of the policy. The finding is this:

"The master concludes, and so reports to the court, that Thomas W. Wynn, the cross-complainant, is entitled to have entered a decree in his favor against the defendant, the Royal Union Mutual Life Insurance Company, for the sum of $5,000, less the sum of $766.85, the same being the aggregate amount of the premiums due on said policy from and after the 1st day of July, 1898, up to the date of the death of said David Wynn, Jr., together with interest on said sum, at the rate of 7 per cent. per annum, from the 16th day of March, 1906, and all costs of court laid out and expended herein."

Exceptions have been filed to the report of the master by the insurance company, and it was on these exceptions that the present hearing was held.

The first question for determination is whether it is a case for a cross-bill. The master, who had this question before him as a part of the reference, holds that it was a proper case for a cross-bill, and cites Meissner v. Buek (C. C.) 28 Fed. 161; Carnochan v. Christie, 11 Wheat. 467, 6 L. Ed. 516; Craig v. Dorr, 145 Fed. 307, 76 C. C. A. 559; Brooks v. Laurent, 98 Fed. 647, 39 C. C. A. 201; Mercantile Trust Company v. Atlantic & Pacific Railroad Company (C. C.) 70 Fed. 518.

The special master correctly found that this was a proper case for a cross-bill. It was the only way that the controversy could be ended in this litigation, and their rights finally determined. It was the right

of the surviving defendant and beneficiary in the policy to have a final determination of the matter. The only ground which could be urged against the right to file this cross-bill would be that it sets up a claim as to which the beneficiary had a complete and ample remedy at law. The authorities do not sustain this position.

In Weathersbee v. American Freehold Land Mortgage Co. (C. C.) 77 Fed. 523, Judge Simonton says this, which is pertinent here:

"The grounds of demurrer are, in substance, that the cross-bill sets up a legal demand, and seeks, at the hands of the court, relief for which there is a plain, adequate, and complete remedy at law; and also that the relief demanded cannot be given, or the prayer entertained, until the defendant (complainant in the cross-bill) offers to pay the sum admitted to be due. In equity a defendant can pray nothing in his answer except to be dismissed by the court. If he has any relief to pray, he must do so by cross-bill. The cross-bill is not a new suit. It is merely auxiliary—a dependency upon a part of, the original suit. It is brought in order to obtain full relief to all parties; and it is specially a mode of defense in the cause. Field v. Schieffelin, 7 Johns. Ch. [N. Y.] 252 [11 Am. Dec. 441]. The defendant may rely on matters purely legal, provided they be connected with the matters of the bill, for his defense, and by his cross-bill require the plaintiff to answer thereto. 2 Daniel, Ch. Prac. (Perkins' 3d Am. Ed.) 1650. This author, a recognized authority, at page 1653, says: 'But a cross-bill is considered a mode of defense or a proceeding to obtain a complete determination of a matter already in litigation in the court. The plaintiff in the cross-bill is not, at least as against the plaintiff in the original bill, obliged to show any ground of equity to support the jurisdiction of the court.' But the subject-matter of the cross-bill bill must be essentially connected with that of the original bill, and not extraneous thereto. The distinction is clearly shown by Judge Wallace in Lautz v. Gordon [C. C.] 28 Fed. 264."

In Springfield Milling Co. v. Barnard & Leas Manufacturing Co., 81 Fed. 261, 26 C. C. A. 389, Circuit Judge Sanborn, speaking for the Circuit Court of Appeals for the Eighth Circuit, uses this language in reference to a cross-bill:

"The office of a cross-bill is either to warrant the grant of affirmative relief to the defendant in the original suit, to obtain a discovery in aid of the defense in that suit, to enable the defendant to interpose a more complete defense than that which he could present by answer, or to obtain full relief to all parties, and a complete determination of all controversies which arise out of the matters charged in the original bill. The fact that the cross-bill fairly tends to accomplish either of these purposes is generally a sufficient ground for its interposition. It must seek equitable relief; but, subject to this qualification, a complainant who has brought a defendant into a court of equity in order to subject him to an adjudication of his rights in a certain subject-matter, cannot be heard to say that there is no equity in a cross-bill which seeks an adjudication of all the rights of the parties to the original suit in the same subject-matter. The issues raised by the cross-bill must be so closely connected with the cause of action in the original suit that the cross-bill is a mere auxiliary or dependency upon the original suit; but, subject to this qualification, new facts and new issues may properly be presented by a cross-bill" —citing Story, Eq. Pl. §§ 398, 399; 1 Beach, Mod. Eq. Prac. §§ 433, 435; Carnochan v. Christie, 11 Wheat. 446, 6 L. Ed. 516; Cross v. De Valle, 1 Wall. 5, 17 L. Ed. 515; Ayres v. Carver, 17 How. 591, 595, 15 L. Ed. 179; Meissner v. Buck (C. C.) 28 Fed. 161, 163; Chicago, M. & St. P. Ry. Co. v. Third Nat. Bank, 134 U. S. 276, 10 Sup. Ct. 550, 33 L. Ed. 900; Davis v. Christian Union, 100 Ill. 313; Cartwright v. Clark, 4 Metc. (Mass.) 104; Derby v. Gage, 38 Ill. 27; French v. Griffin, 18 N. J. Eq. 279; Graham v. Berryman, 19 N. J. Eq. 29; Wickliffe v. Clay, 1 Dana (Ky.) 585, 589; Allen v. Roll, 25 N. J. Eq. 164; King v. Insurance Co., 45 Ind. 43.

And further along in the opinion, Judge Sanborn says (page 265 of 81 Fed., page 394 of 26 C. C. A.):

"It is the province and duty of a court of equity, which has properly acquired jurisdiction of a subject-matter for a necessary purpose, to proceed and do final and complete justice between the parties, where it can be done in that court as well as by proceedings at law."

In Ex parte Railroad Company, 95 U. S. 221, 24 L. Ed. 355, Chief Justice Waite, speaking for the court, says:

"A cross-bill must grow out of the matters alleged in the original bill, and is used to bring the whole dispute before the court, so that there may be a complete decree touching the subject-matter of the action"—citing 2 Daniell, Ch. 1548.

In the present case the court has properly acquired jurisdiction of the subject-matter of the controversy, by the original bill of the insurance company, and the cross-bill of Thomas W. Wynn, seeking a decree in his favor for the amount of the insurance policy, in the event the defense in the original bill should be sustained, makes, in my judgment, under all the authorities and in accordance with equity practice, a proper case for a cross-bill.

The important matter for determination in this case is as to the drinking habits of the assured, and as to his statements, in reference thereto, made to the physician who examined him for this company, contrasted with the statements subsequently made to the physician examining him for a policy in the Kentucky company, and considering, in the same connection, all the testimony before the master on the subject.

A part of the report of the special master, dealing with this subject, is as follows:

"With reference to the habits of David Wynn, Jr., and as to his practice as regards the use of spirits, malt liquors, wines, or other alcoholic beverages, it appears that he represented to said company at the time of his application for said policy, in and by said medical examination, that he used only a few drinks of beer daily, i. e., one or two glasses of beer at morning lunch, and same at evening lunch, and some days none at all. It appears from the medical examination dated July 16, 1898, which was made by E. H. Sims, for the Mutual Life Insurance Company of Kentucky, that David Wynn, Jr., stated in answer to the question as to what was his present indulgence, and whether used daily or not, he answered that he used daily three ounces of whisky and one glass of beer.

"It does not appear that David Wynn, Jr., signed this statement, but Dr. Sims testifies that David Wynn, Jr., stated these facts in answer to the questions propounded to him by Dr. Sims, in this medical examination, and from the evidence of Dr. Sims it appears that he put the answer down with reference to whisky, as an approximation; that the said David Wynn, Jr., did not say in so many words, 'three ounces a day,' but that Dr. Sims put that amount down as an approximation of what Wynn said he used, and Dr. Sims stated that three ounces would be six tablespoonfuls. Dr. Sims also stated that when he examined David Wynn, Jr., on July 16, 1898, he had the appearance of being a man who drank steadily, but it also appears from the cross-examination of Dr. Sims that this appearance might have resulted from conditions occurring after July 1, 1898, and it further appears that Dr. Sims advised the risk, at the time.

"All of the witnesses who testified with reference to the habits of the assured, with reference to drinking, say that he did not drink to excess. * * *

The doctor more familiar with the assured states that his drinking habit did not affect the risk, and that he was a first-class risk at the time the policy was written. On the blank for the medical examination showing printed instructions to the medical examiner. it appears that the standard fixed by the company was an allowance of three ounces of ardent spirits daily. * * * There was no evidence to show that David Wynn, Jr., drank more than that amount.

"The evidence as to the cause of the death of the assured seems to establish the fact that the death of the assured was not caused from excessive drinking. Two of the physicians testified to this effect. The evidence as to the cause of his death seems to establish the fact that the assured died with gastroenteritis, an inflammation of the stomach and bowels. The insurance company attempted to show that this disease was probably accelerated or caused by excessive drinking. However, in the opinion of the master the evidence does not bear out this theory.

"The master, therefore, concludes and makes the finding of fact that David Wynn, Jr., died from gastroenteritis, an inflammation of the stomach and bowels, and that this disease was not caused from excessive drinking. The master further finds that David Wynn, Jr., at the time of making application for the policy involved in this case, did drink alcoholic and malt liquors to some extent, but that the evidence is insufficient to establish the fact that this drinking habit was to such an extent or excess as to be material to the risk or to enhance the risk undertaken and assumed by the insurance company; although the evidence shows that Wynn drank more whisky than he represented.

"The master further finds that David Wynn, Jr., must have known at the time that he made the representations in reference to his drinking habit that the same were untrue; and the master further finds that the insurance company had no notice or knowledge, at the time of the issuance of the policy sued on, that David Wynn, Jr., used any alcoholic beverages whatever, except beer.

"The master finds, and so reports to the court the finding, that David Wynn, Jr., did misstate or misrepresent the extent of his drinking habit at the time of his application for this policy; it appearing from the application that he represented that he drank beer, a few drinks daily. one or two glasses at the morning lunch, and same at evening lunch, and some days none at all, and the evidence shows that he drank beer and also whisky. However, the master further finds that the drinking habit of David Wynn, Jr., was not of such a character or extent as to be material or to enhance the risk undertaken and assumed by the insurance company. The master further finds, and so reports to the court, that there was no such variation in the representations as to his drinking habit made by David Wynn, Jr., in his application for the insurance or in the medical examination from what was the actual truth, as to his drinking habit, by which the nature, extent, or character of the risk undertaken and assumed by the insurance company was changed or enhanced."

The insurance company, as stated, depends mainly here, to sustain the falsity of the statements made by the assured to this company, as to his drinking habits, on different statements made by him to the physician examining him a few weeks afterwards, for insurance in another company. On this subsequent examination he stated to the examining physician, Dr. Sims, that he did drink some whisky, and Dr. Sims approximated what he stated, as being three ounces per day; three ounces being, according to the physician's statement, six tablespoonfuls. The special master is of opinion, and so reports, that the drinking of this amount of whisky per day would not have been regarded as material if the same had been stated by the assured at the time he made his application in this company and in his answers to the medical examiner.

The special master's conclusions of law are as follows:

"The master finds and reports to the court the following conclusions of law in this case:

"The master finds that the law of Georgia controls in the construction of the contract of insurance which is sought to be set aside by the complainant and which is sought to be recovered by the cross-complainant. See Fidelity Mutual Life Insurance Company v. Jeffords, 107 Fed. 402 [46 C. C. A. 377, 53 L. R. A. 193]; Equitable Life v. Pettus, 140 U. S. 226 [11 Sup. Ct. 822, 35 L. Ed. 497].

"The following sections of the Civil Code of Georgia are applicable in this case:

" 'Sec. 2097. Application.    Good Faith.    Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent or character of the risk is changed, will void the policy.'

" 'Sec. 2099. Concealment.    A failure to state a material fact, if not done fraudulently, does not void, but the willful concealment of such a fact, which would enhance the risk, will void the policy.'

" 'Sec. 2098. Effect of Misrepresentations.    Any verbal or written representations of facts by the insured to induce the acceptance of the risk, if material, must be true, or the policy is void.    If, however, the party has no knowledge, but states on the representations of others bona fide, and so informs the insurer, the falsity of the information does not void the policy.'

" 'Sec. 2101. Willful misrepresentation by the assured or his agent, as to the interest of the assured, or as to other insurance, or as to any other material inquiry made, will void the policy.'

"These principles are made applicable to both life and fire insurance.    Civ. Code Ga. § 2117.    See, also, Mobile Fire Insurance Company v. Coleman, 58 Ga. 251, 256; Insurance Company v. Miller, 58 Ga. 420; Fidelity Mutual Life Insurance Co. v. Jeffords (C. C. A. this Circuit) 107 Fed. 402 [46 C. C. A. 377, 53 L. R. A. 193].

"In Travelers' Insurance Co. v. Sheppard, 85 Ga. 758 [12 S. E. 21], Judge Bleckley says: 'We think it follows that, in making a prima facie case for recovery, the action is to be treated as founded on so much of the contract as is set forth in the policy, leaving stipulations, warranties, and conditions expressed only in the application to be brought to the notice of the court defensively by the company.'    See, also, O'Connell v. Supreme Conclave, 102 Ga. 147 [28 S. E. 282, 66 Am. St. Rep. 159], which holds that the burden is on the company to satisfy the jury, by a fair and reasonable preponderance of the evidence, that O'Connell made false and fraudulent representations regarding his age, for the purpose of inducing the defendant to issue him the certificate.

"Under the authorities above cited, the master is of the opinion that in order for the complainant to be entitled to a decree avoiding, setting aside, and canceling the policy referred to in this case, on account of misrepresentations, it is incumbent upon it to show by a preponderence of evidence that the deceased made in his application for the insurance or in the medical examination certain representations or statements; that these representations or statements were false at the time they were made; that the falsity of the same was known to the insured at the time the representations were made (or that he stated them recklessly without knowledge); that they were made with a view of procuring the insurance; that the company had no notice of the falsity of said statements or representations; that the company acted upon these statements and representations to its injury; that these representations or statements were as to matters material to the risk, or amounted to variations by which the nature or extent or character of the risk was changed or enhanced.

"When the above state of facts appears, then the law will conclusively presume an intent to deceive, and a case of actual fraud will be made out, although the insured may not have really intended to prejudice the rights of the company.    Northwestern Life Insurance Company v. Montgomery, 116 Ga. 799 [43 S. E. 79].

"In the opinion of the master, the effect of misrepresentations is so definitely settled by statute in Georgia that this case is relieved from any uncertainty that might arise from the distinction between 'representations' and 'warranties.' Be that as it may, the policy in this case does not by express terms provide that it will be void, if the representations are untrue; and the representations made by David Wynn, Jr., are not denominated as 'warranties' in the policy; therefore there can be no question but that the Code sections cited control the effect of these representations.   O'Connell v. Supreme Conclave, 102 Ga. 144 [28 S. E. 282, 66 Am. St. Rep. 159].

"The master further is of the opinion that in order for the complainant to be entitled to a decree, avoiding, setting aside, and canceling the policy, on account of concealment, it is incumbent upon it to show by a preponderance of evidence that the deceased failed to state or willfully concealed a material fact, in his application for the policy, or in the medical examination; that he knew of the facts so concealed, at the time of making the application; that they were concealed for the purpose of procuring the insurance; that the company had no knowledge of the concealed facts, at the time of the issuance of the policy; that the facts failed to be stated or willfully concealed enhanced or increased the risk undertaken or assumed by the insurance company.

"Counsel on both sides are practically agreed as to the legal principles governing this case, except that the insurance company's counsel cite the following cases which seem to conflict to some extent with the Georgia law, to wit:

"Standard Life & Accident Ins. Co., v. Sale, 121 Fed. 664 [57 C. C. A. 418, 61 L. R. A. 337].   In this case the representations were made a part of the policy, by express terms, and it was provided therein that, if any of said statements were untrue in any respect, the policy should be null and void.

"Webb et al. v. Security Mutual Life Insurance Co., 126 Fed. 635 [61 C. C. A. 383].   In this case, the application was made a part of the policy, and it was expressly provided that all of the statements therein made should be deemed material, and that the policy should be void, if any statements were not full and complete, or were untrue.

"Brignac et al. v. Pacific Mutual Insurance Co. [112 La. 574, 36 South. 595], 66 L. R. A. 322, seems to go further than any of these cases and to hold any matter that is specifically inquired about material as a matter of law, though the matter may not have been really material to the risk in the particular case; although, even in this case, it was held that 'the mere fact itself that an application for insurance may be annexed to and made a part of the policy of insurance does not carry with it necessarily, as a consequence, that all the statements and declarations contained therein should be held to be "warranties," though the failure so to annex the application and make it a part of the policy would leave them to be dealt with as "representations." '

"Counsel for Thomas W. Wynn contended in this case that the medical examination was not made a part of the policy.   The master disagrees with this contention, and construes the language at the bottom of the policy, 'the benefits, agreements and provisions written and printed in the following pages are a part of this contract as fully as if they were recited over the signatures hereto affixed,' to mean that the application and also the medical examination, which are in fact attached to the policy, to be a part of the contract; but the master holds that the statements and representations contained in the application and in the medical examination are to be treated as 'representations,' and not as 'warranties.'

"The master is of the opinion that the above-stated decisions cited by counsel for the insurance company are easily distinguishable from the case at bar, and that the Georgia law is not so strict as the principle decided in the Brignac Case, which holds that the more specific inquiry in the application or in the medical examination of itself makes the representation material.

"The master finds that if the evidence in regard to any one or more of the alleged misrepresentations or willful concealments be sufficiently strong to justify a finding that the risk was increased or enhanced, the insurance company would be entitled to the decree prayed for.

"It therefore follows, from the foregoing findings of fact and conclusions of law, the representations with regard to the assured's health record having

been found to have been true—that is, the evidence having failed to show that they were willfully false—and it having been found that the evidence with reference to representations in regard to the drink habit fails to sufficiently establish one of the most important requisites of the Georgia law, to wit, that the alleged misrepresentations or concealments were of such a nature as to increase or enhance the risk, or to be material to the risk assumed, the master concludes, and so reports to the court, that the complainant, the Royal Union Mutual Life Insurance Company, is not entitled to a decree, canceling, annulling, and directing the surrender of the policy of insurance issued by it to David Wynn, Jr., wherein Thomas W. Wynn, was the beneficiary, the same being for the sum of $5,000, and dated July 1, 1898, as set forth and described in the pleadings in this cause; but the master holds that said policy is now of full force and effect and is a legal, valid, and binding contract, upon the part of the parties thereto; and the surviving defendant in the original bill is entitled to a decree denying the relief prayed for in said original bill of complaint and amendment thereto, and for all costs of court laid out and expended.

"The master further concludes, and so reports to the court, that Thomas W. Wynn, the cross-complainant, is entitled to have entered a decree in his favor against the cross-defendant, the Royal Union Mutual Life Insurance Company, for the sum of $5,000, less the sum of $766.85, the same being the aggregate amount of the premiums due on said policy from and after the 1st day of July, 1898, up to the date of the death of said David Wynn, Jr., together with interest on said sum, at the rate of 7 per cent. per annum, from the 16th day of March, 1906, and all costs of court laid out and expended herein.

"There was no evidence showing the exact date that the Royal Union Mutual Life Insurance Company received the proofs of death. There were no formal proofs made out. The letter of the beneficiary giving notice was dated January 13, 1906. The same was acknowledged on the 22d day of January, 1906. The master, therefore, concludes that the time that it would take a letter to reach the insurance company from Columbus, Ga., mailed on the 13th day of January, added to the 13th, would be the time nearest the exact time, in the absence of proof to the contrary; and that interest would run after the expiration of 60 days from that date."

In view of the finding of fact by the special master to the effect that the statement made by the assured (or, rather, his failure to state certain facts) are not material to the risk, that the assured was not an excessive drinker, and that his death was not caused by the drinking habit, this conclusion of law, applied to the facts of the case, appear to me to be sound.

The conclusions of fact, therefore, stated by the master, being supported by the evidence, and his legal conclusions being correct, the exceptions to the report of the master must be overruled, and the same confirmed.

A decree may be taken in accordance therewith in favor of Thomas W. Wynn, for the amount of the policy and interest thereon, as stated by the special master.