## ÆTNA LIFE INSURANCE COMPANY v. FRANCE.

1. The relationship between a party and another for whose benefit he effects an insurance upon his life, if a good and valid consideration in law for any gift or grant, furnishes no ground for the imputation that the transaction was by way of cover for a wager policy.

2. A policy of insurance, taken out by a man upon his life for the benefit of his sister, who has no insurable interest in his life beyond that of relationship, is not void ; and it is immaterial what is the arrangement between them for the payment of the premiums.

3. Where, as in this case, the policy makes the declaration, the questions set forth in the proposal and the answers to them, a part of the contract, and declares, that, if they are found in any respect to be false and fraudulent, it shall be void, the court below did not err in charging the jury, that, where the answers were qualified by the statement of the applicant that they were as nearly correct as he could remember, the right to recover would not be defeated, unless the jury were satisfied that the answers, or some of. them, were untrue in any respect materially affecting the risk, and that the assured knew of their incorrectness.

ERROR to the Circuit Court of the United States for the Eastern District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. Samuel C. Perkins* for the plaintiff in error.
*Mr. Nathan H. Sharpless, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This action was brought by David France and Lucetta P., his wife, to recover the amount of a policy of insurance for $10,000, issued by the Ætna Life Insurance Company on the life of Andrew J. Chew, of Philadelphia, dated Sept. 13, 1865, and payable to the said Lucetta, who was Chew's sister.

The proposals for the insurance, made out upon one of the printed blanks of the company, were signed by both Chew and Mrs. France. The following is a copy of the introductory part of the policy : —

"This policy of insurance witnesseth, that the Ætna Life Insurance Company, in consideration of the sum of $243.50, to them in hand paid by Andrew J. Chew, for the benefit of Lucetta P. France, his sister, and of the annual premium of $243.50, to be paid to said company on or before the thirteenth day of September in every year during the continuance of this policy, do assure the life of Andrew J. Chew, of Philadelphia, in the county of Philadelphia, State of Pennsylvania, in the amount of $10,000 for the term of his life.

"And the said company do hereby promise and agree to and with the said assured, her executors, administrators, and assigns, well and truly to pay, or cause to be paid, the said sum insured to the said assured, her executors, administrators, or assigns, within ninety days after due notice and proof of the death of the said Andrew J. Chew, and in either case all indebtedness of the party to the company shall be deducted from the sum insured. If any notes given by the said Andrew J. Chew for any portion of the cash part of premium on the within policy for any current year shall mature and not be paid, the policy shall become void from that date, and all payments of premium thereon forfeited to said company."

The policy, amongst other things, contained the following stipulation : —

"And it is also understood and agreed to be the true intent and meaning hereof, that if the proposal, answers, and declaration made by the said Andrew J. Chew, and bearing date the thirteenth day of September, 1865, and which are hereby made part and parcel of

this policy as fully as if herein recited, and upon the faith of which this agreement is made, shall be found in any respect false or fraudulent, then and in such case this policy shall be null and void."

The trial resulted in a verdict and judgment for the plaintiffs. The defendant sued out this writ of error.

Numerous exceptions were taken, on which errors are assigned here; but they are all reducible to two heads, or grounds of defence, viz.: 1. Want of insurable interest in Lucetta P. France; 2. Misrepresentation and breach of warranty as to the age and health of said Chew. It is insisted that the rulings and charge of the court below on these points were erroneous.

*First*, On the question whether Lucetta P. France had an insurable interest in the life of Chew, the conceded facts are that she was his sister, as stated in the policy; that, at the time the policy was issued, she was married to the other plaintiff, David France, and in no way dependent on her brother for her support; that the latter was earning his living as a ladies' shoemaker, and was of small means. Evidence was given tending to show that Mrs. France had, at different times, loaned money to her brother to an amount of some $2,000, and lent him $400 more in September, 1865; that a previous policy of like amount with the present had been obtained of the defendant company on Chew's life for his sister's benefit in June of the same year, and that at the time of issuing the policy now in suit he was unmarried, but was engaged to be married, and was in fact married the next day. The policy, as well as the several receipts for the annual premiums, signed by the secretary of the company, and countersigned by its agent in Philadelphia, all acknowledge that said premiums were received from Chew.

The construction given to the policy by the court below was, that it was a contract between the company and Chew for an assurance of his life, with a stipulation and agreement that the money should be paid to his sister; and the court held that such a policy is sustainable at law on account of the nearness of the relationship between the parties, and especially as Mrs. France, at the time the insurance was effected, was one of Chew's next of kin, prospectively interested in his estate as a distributee. We concur in the construction of the policy made by the court, and in the validity of the transaction. As held

by us in the case of the *Connecticut Mutual Life Insurance Company* v. *Schaefer*, *supra*, p. 457, any person has a right to procure an insurance on his own life and to assign it to another, provided it be not done by way of cover for a wager policy; and where the relationship between the parties, as in this case, is such as to constitute a good and valid consideration in law for any gift or grant, the transaction is entirely free from such imputation. The direction of payment in the policy itself is equivalent to such an assignment.

The insurance company gave in evidence three promissory notes given by Lucetta P. France herself for part of the last three premiums paid on the policy, and requested the court to charge, that if the jury believed that the premiums on the policy were paid by Lucetta P. France, whether in cash or by her notes, there was evidence from which they could find that the application for insurance was made and the policy in question taken out by her for her own benefit; and, if such was the case, she must show an insurable interest in the life of her brother, beyond that of mere relationship, before she could recover. The court refused so to charge; and, we think, rightly. Waiving the question, whether, merely as sister of Chew, Mrs. France could have effected in her own name an insurance on his life, without its being obnoxious to the charge of a wager policy, the evidence was incompetent to prove the fact sought to be proved by it. The company, when taking the notes in question, acknowledged the premiums to have been received from Chew, and was estopped from going behind its own admission, under the circumstances of the case. The contract of insurance, as correctly construed by the court, was made with Chew; and the relationship of the parties was such as to divest the assignment of the policy or the direction of its payment to his sister of all semblance of a wagering transaction. Under the circumstances, it matters not if the money or notes required for paying the premium did come from Mrs. France; at most, it was by way of advance on her brother's account, and on his contract. He had a right to take out a policy on his own life for his sister's benefit; and she had a right to advance him the necessary means to do so. As between strangers, or persons not thus nearly connected, such a transaction would be evidence to go to the jury,

from which, according to the circumstances of the case, they might or might not infer that it was mere gambling. But as between brother and sister, or other near relations, desirous of thus providing for each other, and, as said by Chief Justice Shaw, presumed to be actuated by "considerations of strong morals, and the force of natural affection between near kindred operating often more efficaciously than those of positive law" (*Loomis* v. *Eagle Life Ins. Co.*, 6 Gray, 399), the case is divested of that gambling aspect which is presented where there is nothing but a speculative interest in the death of another, without any interest in his life to counterbalance it. On this ground we hold, that where, as in this case, a brother takes out a policy on his own life for the benefit of his sister, it is totally immaterial what arrangement they choose to make between them about the payment of the premiums. The policy is not a wager policy. It is divested of those dangerous tendencies which render such policies contrary to good morals. And as the company gets a perfect *quid pro quo* in the stipulated premiums, it cannot justly refuse to pay the insurance when incurred by the terms of the contract.

*Second*, The other exceptions relate to alleged misrepresentations by Chew in the proposal for insurance. The policy makes the proposal and the answers to the questions therein a part of the contract, and declares that if they shall be found in any respect false or fraudulent, the policy itself shall be void. Among the questions are the following, with the answers given to each respectively : —

" '4. Place and date of birth of the party whose life is to be insured?' *Ans.* 'Born in New Jersey, in 1835.'

" '5. Age and next birthday?' *Ans.* 'Thirty years, Oct. 28, as near as I can recollect.'

" '11. Has the party ever had any of the following diseases; if so, how long, and to what extent: palsy, spitting of blood, consumption, asthma, bronchitis, diseases of the lungs, . . . rupture, convulsions, &c.?' *Ans.* 'None.'

" '12. Is the party subject to habitual cough, dyspepsia, &c.?' *Ans.* 'No.'

" '13. Has the party had, during the last seven years, any severe disease? If so, state the particulars, and the name of the attending physician. *Ans.* 'No.' "

The answers were followed by this qualification : " The above is as near correct as I remember."

The defendant offered evidence tending to show that Chew, at the time of the application, would have been thirty-five or thirty-seven years old at his next birthday, instead of thirty, and that he was born Oct. 28, 1828 ; and that he had been ruptured from infancy, and so continued up to the date of the application, and wore a truss ; and that he had had consumption, or some disease of the lungs ; and that he was subject to habitual cough and dyspepsia ; and had been attended by physicians for severe disease within seven years ; and that he knew all of these matters at the time of the application. Counter evidence was given on the part of the plaintiffs. Among the proofs of death was an affidavit of the widow of Chew, stating that he was born Oct. 28, 1828, which defendant relied on as to the point of age. Mrs. France denied all knowledge of the papers received by defendant as proof of loss, except her own affidavit ; and as to the alleged rupture, called, amongst others, Dr. Lewis, as an expert, and proposed to him the question, whether the existence of a reducible rupture in a subject of life assurance in his opinion appreciably increased the risk of the underwriters ? The question was objected to, but allowed.

The defendant asked the court to charge, that if any of the answers were untrue, in whole or in part, the verdict must be for the defendant. The court charged that the truth or falsehood of the answers materially affected the risk ; but added : —

" But the answers here are qualified by the words appended at the foot of the application, 'the above is as near correct as I remember,' which are applicable to all the statements made by the assured. He must be understood, therefore, as stipulating only for the integrity and approximate accuracy of his answers, and not for their absolute verity. Without this qualification, substantial error in any of his answers would avoid the policy, irrespective of his motive, because he warranted their truth ; with it, the plaintiffs' right to recover will not be defeated, unless it appears that some one of the answers was consciously incorrect.

" To avoid the policy, then, the jury must be satisfied that the

answers, or some of them, were untrue in any respect materially affecting the risk, and that the assured knew of their incorrectness."

And, in particular, as to Chew's representation of his age, the court charged, " that if he knew, or had reason to believe, that the year of his birth, as stated in the answer, did not correctly indicate his age, the policy is void, and the plaintiffs are not entitled to recover."

We think the qualification made by the court was entirely justified by the form in which the answers were given. If the company was not satisfied with the qualified answer of the applicant, they should have rejected his application. Having accepted it, they were bound by it.

As to the diseases inquired about, the court charged substantially to the same effect; namely, that the answers called for were material, and if untrue, and Chew knew or had reason to believe them so, the policy was void. As to the alleged rupture, in particular, the court said : —

" If, however, it appears that the rupture had been completely reduced, so that its effects had entirely passed away, and it had ceased to affect his health or impair his capacity to take fatiguing and prolonged exercise, the jury will determine whether the answer is untrue as nearly as he could remember. On the other hand, if the rupture had not been cured, it is hardly presumable that he could have forgotten it at the time of the application; and if the jury so find, it was his duty to disclose the fact that he had been afflicted with this disease, and his negative answer will avoid the policy."

And so of the rest. We think the charge was a fair one, and gave the defendant the full benefit of any falsity contained in the answers given by the applicant. Under the charge as given, we do not see how the evidence of the physician, even if irrelevant, could injure the defendant.

Other points were raised, but it is unnecessary to discuss them. From a careful examination of the whole case, as presented, we are satisfied that there is no error in the record.

*Judgment affirmed.*