KOPETOVSKE et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit.   May 2, 1911.)

No. 2,079.

1. INSURANCE (§ 668*)—LIFE INSURANCE—ASSIGNMENT—INSURABLE INTEREST—QUESTIONS FOR JURY.

   Decedent having obtained two life insurance policies payable to his executors, administrators and assigns, assigned both to his nephew B., and thereafter decedent and B. again assigned the policies to plaintiff bank as security for a loan. Decedent was unmarried and had no relatives in the United States. He was associated in business and lived in the same house with B., constituting a part of his family, but the nature of their business relation, whether partners or otherwise, was not shown. Decedent employed a lawyer to look after his affairs down to the time of his death which occurred when he was 51 years old. *Held*, that such assignment did not constitute a wager as a matter of law, on the theory that B. had no insurable interest in decedent's life, since whether B. had reasonable ground to expect pecuniary advantage from decedent's continued existence was for the jury.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 668.*

   What constitutes an insurable interest in human life, see note to Manhattan Life Ins. Co. v. Hennessy, 39 C. C. A. 632.]

2. INSURANCE (§ 122*)—LIFE INSURANCE—ASSIGNMENT—INSURABLE INTEREST.

   A moral, as distinguished from a legal, obligation resting on insured to render a pecuniary benefit or advantage to an assignee of certain life policies, was sufficient to confer on such assignee an insurable interest.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 166, 167; Dec. Dig. § 122.*]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Action by Ike Kopetovske, administrator of Solomon Rosenthal, and others against the Mutual Life Insurance Company of New York. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

The plaintiffs seek a reversal on the ground that the trial court erred in directing a verdict for the defendant. On October 4, 1898, the defendant issued to Rosenthal two policies for $2,000 and $3,000, respectively, each payable to his executors, administrators, and assigns. Both were thereafter assigned to his nephew, Aaron Berger. Subsequently Rosenthal and Berger assigned them to the Citizens' Bank & Trust Company of Chattanooga, Tenn., as collateral security for the payment of a loan of some $1,800 and interest. On Rosenthal's death, about July 1, 1905, defendant furnished to Berger blanks for proofs of death. Its agent's acknowledgment of their receipt in a completed form "with blank receipts signed by Aaron Berger, the assignee," followed later, with the statement that they had been sent to the New York office, and that a check in payment of the policies would be delivered as soon as received. Payment having been refused, Berger, the bank and the insured's administrator, who is Berger's son-in-law, filed a bill in equity in the state

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

court, alleging that Rosenthal had, with the defendant's assent, duly assigned the policies and all his interest in and rights thereunder to Berger, and prayed a recovery on the policies for the use and benefit of the bank to the extent of the indebtedness to it, and for the use of Berger as to the residue. The parties having agreed, after the removal of the case, that the bill filed in the state court should be treated as a declaration at law, the defendant pleaded that it did not contract, promise, agree, or undertake, and does not owe the plaintiffs, as they in their declaration alleged, and interposed the further defense that Berger's relationship to Rosenthal was no closer than that of nephew; that neither he nor the bank, at the time the policies were assigned, had an insurable interest in his life; that Berger for his own benefit incited Rosenthal, whose part in the transaction was alleged to be merely colorable and to conceal Berger as the real actor, to apply for and procure the policies, that they are gambling or wager policies which were taken out by Berger and whose premiums were paid by him, and that their subsequent assignment was in furtherance of an unlawful agreement and purpose, contrary to public policy, and with a fraudulent intent to evade the law governing gambling or wager insurance. Each of the policies makes the application a part of the contract, and recites that the company will decline to notice any assignment of it until the original assignment, or a duplicate or certified copy thereof, shall be filed in the defendant's home office, and that the company will not assume any responsibility for the validity of an assignment. The application states that Rosenthal was born in Russia, was at its date single, aged 44, and a retail salesman, and then had a living sister aged 80, and three brothers aged 50, 57, and 60, respectively. The date of his arrival in this country is not shown, but he was preceded by Berger and employed counsel in 1896 or 1897, who represented him until his death. During the whole of that time he was continuously associated in business with and lived in the same house with Berger, who was a married man, and constituted a part of the latter's family. Excepting Berger, he has no relative in the part of the country in which they resided. Berger operated first a grocery and later a feed store under the name of the Chattanooga Produce Company. A witness testified that Rosenthal clerked in those stores. He later said he did not know whether he was a partner or not, or who owned the business, but the two ran the business and acted together. Rosenthal left no estate and after his death the store was recognized as the property of Berger. He had insured his life in different companies to the amount of $20,000, of which amount $15,000 were in Berger's favor. As he could not write the English language, his name was affixed to the application for the policies involved in this case by another, and to that for a $10,000 policy by Berger. In each instance the signature was witnessed. When the plaintiffs rested in chief, the defendant moved for a directed verdict "primarily upon the ground that an insurable interest is not shown in favor of the alleged assignee, and also that this suit is brought exclusively for the benefit of the two alleged assignees, the bank and Berger, and no assignment is proven." The motion was sustained, and the plaintiffs now seek a reversal.

J. B. Sizer and Robert Pritchard, for plaintiffs in error.
W. B. Miller (James McKeen, of counsel), for defendant in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and SATER, District Judge.

SATER, District Judge (after stating the facts as above). The question for decision is: Did the court err in sustaining the motion for a directed verdict?

[1] The only question raised by the motion and decided by the court was, whether, under the pleadings and proof, either Berger or the bank is entitled to a recovery. The letter of defendant's agent acknowledging the receipt of the proofs of death recognized Berger as the assignee of the policies. The case was tried on the theory that

he was such. There is no evidence that he was a creditor of Rosenthal, or that the assignment was made to protect him as such. The court found that Berger, as a nephew of Rosenthal, was not within the degree of relationship that creates an insurable interest, and that, in view of Crotty v. Mut. Life Ins. Co., 144 U. S. 621, 12 Sup. Ct. 749, 36 L. Ed. 566, the burden was upon him to show at least by prima facie testimony both an insurable interest and its extent. The motion was sustained because the court was of the opinion that as to both of those points there was no evidence to go to the jury.

The policies were assignable choses in action, provided their assignment was not forbidden by settled rules of public policy. Russell v. Grigsby, 168 Fed. 577, 94 C. C. A. 61; N. Y. Mut. Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997. At the threshold, then, we are met with the query: May there be a valid assignment of a policy to one who is not a creditor, and who is no more nearly related to the insured than was Berger to his uncle, and if so, under what circumstances? In the solution of the question this court may exercise an independent judgment, for in Russell v. Grigsby, involving a policy whose terms relating to its assignment were kindred to those of the policies issued to Rosenthal, this court held that the question of whether the contract of assignment, from considerations of public policy, was valid or not, was not dependent upon local statute or usage, but upon general law, in the determination of which a federal court is under obligation to exercise an independent judgment. We naturally, therefore, seek for our guide the deliverances of the Supreme Court as to what constitutes an insurable interest. That court, whose utterances on that subject have not always been understood, has consistently spoken to the subject in Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251, Ætna Life Ins. Co. v. France, 94 U. S. 561, 24 L. Ed. 287, Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, and N. Y. Mut. Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997, but as diligent counsel have discovered no case parallel to the one at bar, and draw different conclusions from the above cases, such review of them will be made as may be deemed necessary to deduce the rule which they announce.

The case of Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251, arose on a policy issued on the joint lives of the husband and wife and made payable to the survivor on the death of either. Following the subsequent divorcement of the parties, the wife paid the premiums. Both remarried. On the death of her former husband, the survivor sued for and recovered the proceeds of the policy. Mere wager policies—policies in which the insured has no interest whatever in the matter insured, but only an interest in its loss or destruction—were condemned as void. But on the point of the alleged cessation of the wife's insurable interest by reason of the divorce of the parties, Mr. Justice Bradley, speaking for the court as to what constitutes such an interest in the life of another, said:

"But precisely what interest is necessary, in order to take a policy out of the category of mere wager, has been the subject of much discussion. In marine and fire insurance the difficulty is not so great, because there insur-

ance is considered as strictly an indemnity. But in life insurance the loss can seldom be measured by pecuniary values. Still, an interest of some sort in the insured life must exist. A man cannot take out insurance on the life of a total stranger, nor on that of one who is not so connected with him as to make the continuance of the life a matter of some real interest to him. It is well settled that a man has an insurable interest in his own life, and in that of his wife and children; a woman in the life of her husband; and a creditor in the life of his debtor. Indeed, it may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life, and there is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend; or two or more persons, on their joint lives, for the benefit of the survivor or survivors. The old tontines were based substantially on' this principle, and their validity has never been called in question. The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest."

The policy involved in Ætna Life Ins. Co. v. France, 94 U. S. 561, 24 L. Ed. 287, was taken out by the insured for the benefit of his sister. The direction in the policy itself of payment to her was equivalent to an assignment. He was a married man, and in no wise dependent on the beneficiary. His means were small, and he earned his own livelihood. He was engaged to be married and was married the day following the issuance of the policy. He had borrowed at various times of his sister about $2,400, but shortly previous to the date of the policy he had made her the beneficiary in another policy of $10,000. She had given her promissory notes for the payment of the last three premiums. The contention was made that she was required to show an insurable interest in the life of her brother beyond that of mere relationship to entitle her to recover. But it was held that any person has a right to procure insurance on his life and to assign it to another, provided it be not done by way of cover for a wager policy, that the relationship constituted a good and valid consideration for any gift or grant and divested the assignment of the policy or the direction of its payment to her of all semblance of a wagering transaction, and that he had the right to take the policy out for her benefit, and she had a right to advance him the necessary funds to do so. The court significantly added:

"As between strangers, or persons not thus nearly connected, such a transaction would be evidence to go to the jury, from which, according to the circumstances of the case, they might or might not infer that it was mere gambling. But as between brother and sister, or other near rel'ations, desirous of thus providing for each other, and, as said by Chief Justice Shaw, presumed to be actuated by 'considerations of strong morals, and the force of natural affection between near kindred operating often more efficaciously than those of positive law' (Loomis v. Eagle Life Ins. Co., 6 Gray [Mass.] 399), the case is divested of that gambling aspect which is presented where there is nothing but a speculative interest in the death of another, without any interest in his life to counterbalance it."

In the principal case of Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, the evidence showed that on the same day that the assured applied for his insurance, he agreed to assign it to the Scioto Trust Association, of which Davis was the treasurer, in consideration of its keeping up the insurance at its exclusive expense and its payment of one-tenth of the proceeds of the policy as the insured might direct.

On the day following, the assignment of the policy was made. The insured obligated himself to pay to the association the sum of $6 at the time of the execution and delivery of the agreement, and thereafter the paltry sum of $2.50 annual dues, and to keep it informed of his whereabouts. The insured having died, the association collected the amount of the policy and paid one-tenth, less certain small deductions, to his widow. Thereafter the administrator of the insured sued the association to recover the residue of the proceeds. The policy was valid as between the insured and the company, because its assignment followed its issuance. It was assignable by the insured to the association as security for any sums loaned him, or advanced to keep it alive, but for no other purpose, because the association had no insurable interest in his life, and could not have originally taken the policy out on his life. To the extent to which it stipulated for the proceeds of the policy beyond the sums advanced by it to him, the association occupied the position of one holding a wager policy, a speculative contract upon the life of the insured with a direct interest in its early termination. In discussing what constitutes an insurable interest, Mr. Justice Field said:

"It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more efficaciously—to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."

The endowment policy involved in New York Mut. Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997, issued at the defendant's instance to the assured or his assigns. At the time the application for it was made, it was assigned to the defendant. Thereafter the defendant murdered the insured to obtain the proceeds of the policy. The right to recover was denied, but on the question of insurability it was held that:

"A policy of life insurance, without restrictive words, is assignable by the assured for a valuable consideration equally with any other chose in action, where the assignment is not made to cover a mere speculative risk, and thus evade the law against wager policies; and payment thereof may be enforced for the benefit of the assignee, and, under the system of procedure in many states, in his name."

Other authorities in harmony with the foregoing are: Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Conn. Mut. Life Ins. Co.

v. Luchs, 108 U. S. 498, 2 Sup. Ct. 949, 27 L. Ed. 800; Loomis v. Eagle Life Ins. Co., 6 Gray (Mass.) 396; May on Insurance (4th Ed.) § 102 A; Bliss on Life Ins. §§ 20–31.

The Supreme Court has not held, and therefore this court may not say, that a nephew may not have an insurable interest in the life of an uncle. It has only to a limited extent specifically enumerated those who may have an insurable interest in the lives of others. It has, however, repeatedly announced and persistently adhered to the rule that a man cannot take insurance, or the assignment of insurance, on the life of a total stranger, nor on that of one who is not so connected with him as to make the continuance of such life a matter of some real interest to him; that he may insure his life for the benefit of a relative or friend, but in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the life of the insured; that, generally speaking, any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life—an expectation that may arise from the relations of the party obtaining the insurance, either as creditor of or surety for the insured, or from ties of blood or marriage to him, but not necessarily an expectation capable of pecuniary estimation, for such expectation may rest on natural affections, which, where the domestic ties exist, are more powerful and often operate more efficaciously to protect the life of the insured than any other consideration; and that the essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest.

It was with reference to these principles that this court decided Kentucky Life & Acc. Ins. Co. v. Hamilton, 63 Fed. 93, 11 C. C. A. 42. One married woman had made another the payee of her policy of insurance. It was contended that it was essential to a recovery that the payee should aver and prove an insurable interest in the life of the insured, and that in default of such averment the contract should be adjudged void as a mere wager policy. The answer tendered no other issue than that the payee was not the wife, child, parent, brother or sister of the deceased, and sought to defeat a recovery upon the assumption that unless one of those relations existed there could be no recovery. The pleadings did not show any particular interest which the payee had in the life of the insured, but the trial court found the policy was not obtained by her or the payee for speculative purposes and that both acted in good faith and without fraud. On the state of the pleadings it was held that the judgment was not void, and that one not a creditor or sustaining to the insured any of the above-mentioned relations, may have an insurable interest in his life. As the Supreme Court had previously done, this court quoted with approval the language of Chief Justice Shaw in Loomis v. Ins. Co., 6 Gray (Mass.) 399, as follows:

"In discussing the question in this commonwealth (Massachusetts), we are to consider it solely as a question at common law, unaffected by the St. of 14 Geo. III, c. 48, passed about the time of the commencement of the Revolution and never adopted in this state. All, therefore, which it seems necessary

to show, in order to take the case out of the objection of being a wager policy, is that the insured has some interest in the life of the cestui que vie; that his temporal affairs, his just hopes and well-grounded expectations of support, of patronage, and advantage in life, will be impaired; so that the real purpose is not a wager, but to secure such advantages, supposed to depend on the life of another. Such, we suppose, would be sufficient to prevent it from being regarded as a mere wager. Whatever may be the nature of such interest, and whatever the amount insured, it can work no injury to the insurers, because the premium is proportioned to the amount; and whether the insurance be to a large or a small amount, the premium is computed to be a precise equivalent for the risk taken."

A recognition of the rule thus sanctioned is found in the later case of Russell v. Grigsby. In that case a policy applied for and carried in good faith by the assured was transferred as a matter of financial necessity to a person having no insurable interest in the life of the insured. The policy was valid, but the rights of the assignee were, as in Warnock v. Davis, restricted to the amount actually paid by him for the policy and subsequent accruing premiums. The question as to what constitutes an insurable interest was necessarily involved in the decision of the case. Judge (now Mr. Justice) Lurton, after concluding from a review of the decisions of the Supreme Court that an insurable interest is absolutely essential to the support of a policy of insurance upon the life of another person, speaking for this court, said:

"Without such an interest the beneficiary has no interest in the continuance of the life of the assured, but rather an interest in its early termination. The field of doubt is as to what is an insurable interest. That one has such an interest in his own life is clear. That he has also such an interest in the life of a close relative by blood or marriage, such as parent and child, husband and wife, there is no dispute. When we pass beyond those relations where there is both a legal and a moral responsibility for support and maintenance, we approach the debatable line. It may be safely said that when a recognized legal dependency does not exist, nor the relation of creditor and debtor, an insurable interest must involve some reasonable expectation of pecuniary benefit or advantage from the continuance of the life of the assured."

[2] Having regard, then, to the state of the law, as Berger was not a creditor of Rosenthal and as the mere relationship of the parties did not impose a legal and a moral responsibility for support, this case rests on debatable ground, and the existence or nonexistence of an insurable interest is a question of fact to be determined from the evidence. It is clear that in the absence of such an interest in Berger, neither he nor the bank can recover. If he had a reasonable ground of expectation of support to be furnished, of pecuniary benefit or advantage, the assignment was valid. 25 Cyc. 705. A legal obligation was not necessary. A moral obligation was sufficient. Carpenter v. Life Ins. Co., 161 Pa. 9, 28 Atl. 943, 23 L. R. A. 571, 41 Am. St. Rep. 880; Ferguson v. Mass. Mut. Life Ins. Co., 32 Hun (N. Y.) 306; Elliott on Ins. § 62. As between Rosenthal and Berger there was a community of interest, both business and domestic. When Berger removed his business from Chickamauga to Chattanooga, Rosenthal moved with him. The inference fairly to be drawn from the evidence is that, from 1896 or 1897, they were continuously associ-

ated in business. The record fails to disclose that either of them was connected in any other business than that of the store. Nevertheless, Rosenthal's business was such as to lead to the employment of counsel some eight or nine years before his death, towards whom he continuously thereafter maintained the relation of client. Whatever their business relation was, they were colaborers in the same enterprise, the conduct of which apparently furnished a livelihood for both. To some degree each was dependent on the other in its management. They lived all the while under the same roof as members of the same domestic circle, far remote, in so far as the record shows, from other relatives, between whom and them it does not appear that any communication ever passed. Each enjoyed, in business and in the family circle, whatever of comfort and protection the other afforded. They were tied together by blood as well as by their domestic and business relations, both of which had been uninterrupted and gave evidence of permanency. The inference would not be far-fetched that their remoteness from others of the same blood bound them in closer union. Rosenthal had no other home. He gave no evidence of abandoning it, and to do so was perhaps to go among strangers. There is no suggestion of discord between them, or of other than such affection as usually exists between persons related and associated as they were. Putting that construction upon the evidence which a court must give it on a motion for a directed verdict, the assignment of the policies is in itself an indication of strong affection and of an intended continuance of existing relations (Lord v. Dall, 12 Mass. 115, 118, 7 Am. Dec. 38; Bliss, Life Ins. § 21)—an affection giving rise to presumptions or inferences different from those which would arise had no such relationship existed. 22 Am. & Eng. Ency. Law, 1278. There is nothing to indicate a contemplated discontinuance of their relations. That Rosenthal was a member of Berger's family rebuts the idea that he was abiding there temporarily as a stranger. 19 Cyc. 452; Tyson v. Reynolds, 52 Iowa, 431, 3 N. W. 469. At his death Rosenthal was but 51 years of age. When the policies were assigned he was in the prime, and, for aught that appears, the vigor of life. If permitted to live his allotted time as determined by the mortality tables, he might have rendered much valuable service in the business which engaged the attention of both, and might have contributed to the support and maintenance of Berger, in case of the latter's disability, or of his family, in case of his death. The plaintiffs were further entitled to the presumption that the policies were originally obtained and subsequently assigned honestly and in good faith (Kerr, Ins. p. 780), and, in the absence of proof to the contrary, that Rosenthal paid the premiums. Crosswell v. Conn. Indemnity Ass'n, 51 S. C. 103, 28 S. E. 200.

If, from the facts in evidence, fair-minded men might honestly draw different conclusions as to whether or not Berger's temporal affairs, his just hopes and well-grounded expectations of support, of advantage in life, would be impaired by Rosenthal's death, and as to whether or not the real purpose of the assignment of the policies was not a wager, but to secure advantages supposed to depend on Rosen-

thal's life, the questions are not of law, but of fact, and are to be settled by the jury, under proper instructions.   Mason & O. R. Co. v. Yockey, 103 Fed. 265, 267, 43 C. C. A. 228.   We are of the opinion that men of that character might thus differently conclude and that a court, taking that view of the evidence most favorable to Berger and the bank, may not, from such evidence and the inferences reasonably and justifiably to be drawn therefrom, say that a verdict might not have been found for them.   Mason & O. R. Co. v. Yockey;  Mt. Adams, etc., Ry. Co. v. Lowery, 74 Fed. 463, 20 C. C. A. 596;  Milwaukee Mechanics' Ins. Co. v. Rhea, 123 Fed. 9, 60 C. C. A. 103;  Rochford v. Penn. Co., 174 Fed. 81, 98 C. C. A. 105;  Erie R. Co. v. Rooney (C. C. A.) 186 Fed. 16.   There was sufficient evidence to send the case to the jury, and it was incumbent on the defendant to show that the assignment of the policies was but a gambling speculation on human life.

The views above expressed render it unnecessary to consider other questions discussed by counsel.   Suffice it to say that if the pleadings are not in such form as to permit, on a retrial, the introduction of evidence by the plaintiffs to show the relations, business and domestic, which existed between Berger and Rosenthal, and the circumstances under which the assignment of the policies was made, they should be so reformed, under the order of the court, as to make such evidence admissible.

The case is remanded to the court below, with directions to set aside the judgment in favor of the defendant and grant the plaintiffs a new trial.